EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Miriam Rodríguez Ramos | |
| --- | --- |
| Recurrida | Certiorari |
| v. | 2004 TSPR 57 |
| Ángel Luis Pérez Santiago | 161 DPR \_\_\_\_ |
| Peticionario | |

Número del Caso: CC-2002-291

Fecha: 14 de abril de 2004

Tribunal de Circuito de Apelaciones:

                        Circuito Regional VII
Juez Ponente:

                        Hon. José L. Miranda de Hostos

Abogado de la Parte Peticionaria:

                        Lcdo. Juan Guijarro Turull

Abogado de la Parte Recurida:

                        Lcdo. Manuel E. Izquierdo Encarnación

Materia: Divorcio

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Miriam Rodríguez Ramos

    Recurrida

        vs.                CC-2002-291   CERTIORARI

Ángel Luis Pérez Santiago

    Peticionario

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

En San Juan, Puerto Rico, a 14 de abril de 2004

El presente recurso nos brinda la oportunidad de evaluar el derecho a hogar seguro una vez se decreta un divorcio, cuando la propiedad que se reclama como tal pertenece a una comunidad de bienes –habida antes de efectuado el matrimonio– compuesta por ambos ex cónyuges. Veamos, en detalle, los hechos que dan lugar al recurso ante nuestra consideración.

I

El 2 de agosto de 1988 el peticionario, señor Ángel Luis Pérez Santiago, y la recurrida, señora Myriam Rodríguez Ramos, siendo solteros ambos,

adquirieron, mediante escritura de compraventa, un inmueble localizado en la Urb. Ciudad Universitaria en Trujillo Alto.[1] El 6 de agosto de 1988, es decir cuatro (4) días después de adquirir la propiedad antes mencionada, las partes contrajeron matrimonio bajo el régimen de la sociedad legal de gananciales. Durante el matrimonio los cónyuges procrearon una hija, quien nació el 14 de febrero de 1989.

Así las cosas, Myriam Rodríguez Ramos presentó demanda de divorcio el 9 de septiembre de 1999 contra Pérez Santiago por la causal de trato cruel. En la demanda adujo que el inmueble propiedad de ambos cónyuges debía ser decretado como hogar seguro de la menor, quien al momento de la radicación de la demanda contaba con diez (10) años de edad. Además, reclamó una cantidad de ochocientos cincuenta dólares ($850.00) mensuales en concepto de pensión alimentaria para la menor.

El peticionario Pérez Santiago, por su parte, contestó la demanda arguyendo que la recurrida no podía

---

[1] De la Escritura de Compraventa Número 628, otorgada ante el notario Roberto A. Combas Martínez, <u>surge que tanto el peticionario como la recurrida tienen una participación de cincuenta por ciento (50%) en el inmueble en cuestión</u>. Surge, <u>además</u>, que la propiedad fue adquirida por el precio de sesenta y cinco mil dólares ($65,000.00). Dicha suma fue saldada al instante por los compradores al entregar una cuantía de cincuenta y dos mil ciento ochenta y nueve dólares con once centavos ($52,189.11) y reteniendo doce mil ochocientos diez dólares con ochenta y nueve centavos ($12,810.89) para saldar la hipoteca que constaba al momento de la transacción como gravamen sobre la propiedad.

reclamar el derecho a hogar seguro, ello debido a que el inmueble en cuestión no pertenecía a la sociedad legal de gananciales. Adujo que, aunque en el referido inmueble se constituyó el hogar matrimonial, éste era propiedad privativa de él.[2] Alegó que lo procedente era la imposición de una pensión de acuerdo a las disposiciones de la Ley Especial de Sustento de Menores, 8 L.P.R.A. sec. 501, *et seq.* Finalmente reconvino contra la recurrida Rodríguez Ramos por la causal de trato cruel.

Como parte de los procedimientos, se celebró una vista el 17 de agosto de 2000 ante el examinador de pensiones alimentarias donde las partes estipularon que el padre alimentante pasaría una pensión mensual de seiscientos treinta dólares ($630.00). Esta estipulación fue acogida por el tribunal de instancia mediante resolución emitida el 23 de agosto de 2000 y notificada el 29 de agosto de 2000.

Pérez Santiago presentó una solicitud de sentencia sumaria parcial alegando que no procedía la reclamación del derecho a hogar seguro por parte de la recurrida.

---

[2] Cabe señalar que en la Contestación a Demanda y Reconvención interpuesta por el peticionario, a través de su abogado, se indica que el inmueble en cuestión era privativo de éste. No obstante, en su solicitud de sentencia sumaria indica que el inmueble era propiedad de ambos cónyuges, comprado en una comunidad de bienes. Apercibimos a los abogados de su deber de establecer la verdad en los escritos que presentan ante los tribunales del País de acuerdo a los Cánones de Ética que rigen la abogacía, más aún cuando la información surge claramente de los documentos que tienen ante su consideración.

Fundamentó su solicitud en que el inmueble en cuestión fue adquirido por ambas partes antes de celebrado el matrimonio y, en consecuencia, no pertenecía a la sociedad legal de gananciales. Adujo que, ausente una propiedad de carácter ganancial, no cabía hablar del derecho a hogar seguro de acuerdo a las disposiciones del Artículo 109-A del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 385a. Argumentó, además, que la adjudicación de la propiedad como hogar seguro a uno de los comuneros violentaba las normas referentes a la comunidad de bienes, según establecidas en el Código Civil.

La señora Rodríguez Ramos, por su parte, presentó oposición a la solicitud de sentencia sumaria arguyendo que el derecho a hogar seguro no tiene relación alguna con la titularidad de la propiedad. Adujo, además, que resultaba irrelevante si la propiedad era ganancial o no, toda vez que la misma era propiedad de ambos cónyuges. Luego de analizada ambas posiciones, el tribunal de instancia denegó la solicitud de sentencia sumaria. A esos efectos, concluyó que no podía descartar el derecho a hogar seguro cuando el inmueble era propiedad de ambos cónyuges. El referido foro entendió que debía celebrar primero la vista de divorcio a los fines de recibir prueba sobre la intención de las partes al establecer su hogar conyugal en el inmueble reclamado como hogar seguro. Razonó que de esta forma estaría en mejor posición para fines de adjudicar la controversia ante sí.

Inconforme con dicho proceder, el peticionario acudió --vía *certiorari*-- ante el foro apelativo intermedio, recurso que fue <u>denegado</u> mediante resolución del 1 de febrero de 2001 y notificada el 9 de febrero de 2001.

La vista de divorcio se celebró el 8 de junio de 2001 y en esa misma fecha el foro primario emitió sentencia de divorcio por la causal de separación.[3] La pensión alimentaria quedó establecida por la cantidad pactada por las partes anteriormente, esto es, seiscientos treinta dólares ($630.00) mensuales.

En lo que respecta al reclamo de hogar seguro de la recurrida, el tribunal de instancia celebró una vista el 24 de septiembre de 2001 con el fin de dirimir la controversia planteada. El 22 de octubre de 2001 el referido foro emitió una resolución, notificada el 15 de noviembre de 2001, en la cual reconoció la existencia de un derecho a reclamar la propiedad en cuestión como hogar seguro en beneficio de Rodríguez Ramos mientras ésta tuviera bajo su custodia a la menor, o dicha menor continúe sus estudios hasta los veinticinco (25) años.

Insatisfecho, Pérez Santiago presentó recurso de *certiorari* ante el Tribunal de Apelaciones. El referido foro apelativo intermedio <u>denegó</u> el recurso. Inconforme, el peticionario acudió ante este Tribunal --vía *certiorari*-- imputándole al foro apelativo haber errado:

---

[3] Dicha sentencia fue notificada el 22 de junio de 2001.

... en su interpretación de la norma jurídica aplicable al caso, al determinar que el concepto de equidad que incorporó el legislador en el Artículo 109-A del Código Civil, autoriza al juzgador a ignorar el texto claro de la ley y reconocer el derecho a reclamar hogar seguro en circunstancias donde no existe tal derecho.

... al ignorar totalmente las disposiciones del Código Civil que regulan la comunidad de bienes en su resolución de la controversia planteada en este caso, a pesar de que reconoce que la vivienda sobre la cual se reclamó el derecho a hogar seguro pertenece a la comunidad de bienes constituida por las partes previo a contraer matrimonio.

... en su interpretación y aplicación del concepto de equidad establecido por el Tribunal Supremo en el caso de Cruz Cruz v. Tirado, supra e incorporado por el legislador en el Artículo 109-A del Código Civil al establecer el derecho a hogar seguro de la demandante recurrida de forma automática, sin que se justificara la necesidad real de que se le otorgara el mismo.

... al determinar que las alegaciones de la parte recurrente con relación a la pensión alimentaria fueron tardías.

Expedimos el recurso. Contando con la comparecencia de las partes, y estando en condición de resolver el mismo, procedemos a así hacerlo.

II

-A-

En Puerto Rico el derecho a hogar seguro se estableció por vez primera mediante la Ley de 12 de marzo de 1903, titulada "Ley para definir el *homestead* (hogar seguro) y para exentarlo de una venta forzosa". Esta Ley fue derogada en su totalidad y reemplazada por la Ley Núm.

87 de 13 de mayo de 1936, la cual, a su vez, fue enmendada mediante la Ley Núm. 116 de 2 de mayo de 2003, 31 L.P.R.A. 1851, *et seq.*, mejor conocida como "Ley para Establecer el Derecho a Hogar Seguro" (en adelante Ley de Hogar Seguro). A esos efectos, la Sección 1 de la Ley 87 disponía, antes de ser enmendada por la Ley 116, en lo aquí pertinente, lo siguiente:

> Toda persona que sea jefe de familia tendrá derecho de poseer y disfrutar, en concepto de hogar seguro, una finca cuyo valor no exceda de mil quinientos (1,500) dólares, consistente en un predio de terreno y los edificios enclavados en el mismo, de cualquier estancia, plantación o predio de terreno, que le pertenezca o posea legalmente, y estuviere ocupada por ella o por su familia como residencia ....

Cabe señalar que la Ley 116 enmendó las Secciones 1 y 5 de la Ley de Hogar Seguro, ante. La Sección 1 ahora dispone, en lo pertinente, que:

> Toda persona que sea jefe de familia tendrá derecho a poseer y disfrutar, en concepto de hogar seguro, una finca cuyo valor no exceda de quince mil (15,000) dólares consistente en un predio de terreno y los edificios enclavados en el mismo, de cualquier estancia, plantación o predio de terreno, que le pertenezca o posea legalmente, y estuviere ocupada por ella o por su familia como residencia. Este derecho a hogar seguro es irrenunciable, y cualquier pacto en contrario se declarará nulo ....

Por otra parte, la Sección 2 de la Ley de Hogar Seguro, ante,[4] dispone para la exención del hogar seguro al establecer que "[d]icho hogar seguro y todo derecho o

---

[4] 31 L.P.R.A. sec. 1852.

título sobre el mismo estará exento de embargo, sentencia, exacción o ejecución...." La Sección 3 de la Ley,[5] dispone para la exención establecida en la Sección 2 cuando ocurre la muerte del jefe de familia o el abandono por uno de los cónyuges. Además, dicha Sección 3 establece que, en casos de divorcio, el tribunal dispondrá del derecho a hogar seguro de acuerdo a la equidad. A esos efectos, la referida Sección indica, en lo aquí pertinente, que:

> La exención establecida en la sección anterior continuará subsistente después de la muerte del jefe de familia a beneficio del cónyuge .... En casos en que el marido o la mujer abandonase su familia la exención continuará a favor del cónyuge que ocupe la finca como residencia; en caso de divorcio el tribunal que lo conceda deberá disponer del hogar seguro según la equidad del caso. (énfasis suplido).

La Exposición de Motivos de la Ley de Hogar Seguro,[6] ante, dispone que la misma se creó a los fines de "establecer el derecho a hogar seguro (*homestead*), exentarlo de una venta forzosa, y fijar el procedimiento para inscribirlo en el registro de la propiedad...." (énfasis suplido).

De las disposiciones antes citadas surgen dos aspectos medulares de esta pieza legislativa. En primer lugar, esta Ley crea un derecho a poseer y disfrutar, en concepto de hogar seguro, una "finca", en los términos

---

[5] 31 L.P.R.A. sec. 1853.

[6] P. de la C. 253, Ley Núm. 87 aprobada el 13 de mayo de 1936.

dispuestos en su Sección 1, siempre y cuando la misma le pertenezca a una persona jefe de familia, o la posea legalmente, y que esté ocupada por dicha persona, o su familia, como residencia. En segundo lugar, la legislación crea una exención que opera en contra de terceros acreedores y a favor del jefe de familia, para así proteger la vivienda familiar de embargos, sentencias, entre otros, hasta un máximo de $15,000.

Como vemos, la Ley de Hogar Seguro no dispone expresamente para la adjudicación de la vivienda familiar cuando ocurre un divorcio donde existen hijos menores habidos en el matrimonio y uno de los cónyuges adviene custodio de éstos. Es más, previo al año 1997,[7] nuestro ordenamiento jurídico no contaba con ninguna disposición legal que proveyera para ello en forma precisa. Antes del año 1997, la única referencia que nuestra legislación hacía en cuanto al derecho a hogar seguro cuando ocurre un divorcio lo era la remisión a equidad contenida en la mencionada Sección 3 de la Ley de Hogar Seguro, ante. Debido a esta encrucijada de a quien atribuir la vivienda familiar cuando ocurre un divorcio y existen menores de

_____

[7] Como discutiremos más adelante, la Ley Núm. 184 de 26 de diciembre de 1997 añadió el Artículo 109-A a nuestro Código Civil, 31 L.P.R.A. sec. 385a. En el mismo se reconoce expresamente el derecho a reclamar el hogar seguro que cobija al cónyuge custodio de hijos menores, incapacitados o dependientes por razón de estudio. Este Artículo se aprobó para dar carácter de Ley a lo dispuesto por este Tribunal en Cruz Cruz v. Irizarry Tirado, 107 D.P.R. 655 (1978).

edad, este Tribunal desarrolló la norma hoy vigente como parte del amplio tema sobre hogar seguro. En otras palabras, desde tiempos inmemoriales, este Foro utilizó las disposiciones de la Sección 3 de la referida Ley de Hogar Seguro, y su equivalente en la Ley anterior, para disponer de la vivienda familiar cuando ocurre un divorcio y existen menores de edad, fundamentando sus decisiones sobre este tema en los supuestos de equidad.[8]

De acuerdo a lo anterior, desde Carrillo v. Santiago, 51 D.P.R. 545 (1937), reconocimos el derecho que cobija a los jefes de familia a los que se le atribuye la custodia de los menores a reclamar la propiedad ganancial como hogar seguro hasta que los hijos menores alcancen la mayoridad. En dicho caso el esposo advino custodio de los cuatro (4) hijos menores habidos dentro del matrimonio a quienes educaba y mantenía. Este Tribunal entendió que, mientras su situación conservara estas características, el esposo tenía derecho a reclamar como hogar seguro la propiedad ganancial y la esposa estaba impedida de solicitar, por ese periodo, la mitad pro indivisa de la propiedad en cuestión. Todo ello conforme a los supuestos de equidad.

---

[8] Como veremos más adelante, estas mismas razones en equidad llevaron a este Tribunal a concluir que el límite en la exención del derecho a hogar seguro dispuesto en la Sección 1 de la Ley de Hogar de Seguro no aplica a casos de divorcio donde se le adjudica la propiedad al cónyuge custodio de los hijos menores de edad. Cruz Cruz v. Irizarry Tirado, ante.

Asimismo, en Cruz Cruz v. Irizarry Tirado, 107 D.P.R. 655 (1978), reiteramos la norma de que existente una propiedad perteneciente a la sociedad de gananciales, la parte quien adviene custodio de los hijos menores de edad tiene derecho a reclamar la misma como hogar seguro, en tanto en cuanto así la equidad lo apoye. En el referido caso la demandada-peticionaria reclamó este derecho ante el tribunal de instancia, el cual atendía la demanda de divorcio entre ésta y su esposo. El foro primario optó por desestimar el reclamo y ordenar la venta en pública subasta del inmueble en cuestión. Este Tribunal, siguiendo la norma establecida en los casos anteriores sobre hogar seguro, utilizó la única legislación disponible en aquel momento, a saber: las Secciones 1 y 3 de la Ley de Hogar Seguro. De esta forma establecimos que, de acuerdo a la equidad, la preservación del hogar seguro familiar para el beneficio del grupo formado por madre e hijos tiene primacía sobre el derecho de propiedad del cónyuge en los activos de la disuelta sociedad de gananciales y, por ello, se le atribuyó el uso de dicha propiedad al jefe de familia.

Como vemos, el reconocimiento de este derecho en casos de divorcio dependió siempre de la equidad del caso, según disposición expresa de la Ley de Hogar Seguro, ante. En tal virtud, la equidad fue siempre el norte para resolver este tipo de controversia. De acuerdo a este supuesto hemos reconocido que "la equidad implica más que

una justicia estrictamente legal, una justicia de tipo natural y moral." Castán Tobeñas, Derecho Civil Español, Común y Floral, 10ma ed., Madrid, Editorial Reus S.A., 1962, Tomo 1, Vol. 1, p. 373. Hemos resuelto que la equidad remite al juzgador a un proceso adjudicativo en busca de la recta razón y de la médula racional y moral del Derecho. Cruz Cruz v. Irizarry Tirado, ante. De igual forma, hemos reconocido que "[e]l más poderoso instrumento para hacer justicia reservado a los jueces es la discreción. La equidad nació precisamente de la necesidad de atemperar el rigor de la norma mediante recurso a la conciencia del juzgador." Banco Metropolitano v. Berríos, 110 D.P.R. 721 (1981).[9]

En aras de reconocer expresamente el derecho a reclamar como hogar seguro la propiedad ganancial cuando ocurre un divorcio y existen menores de edad, --y recogiendo la norma jurisprudencial establecida-- la Asamblea Legislativa añadió el Artículo 109-A del Código Civil, 31 L.P.R.A. sec. 385a.[10] El referido Artículo dispone, en lo aquí pertinente, lo siguiente:

---

[9] No obstante lo anterior, en Cruz Cruz v. Irizarry Tirado, ante, reconocimos que "no debe entenderse esta decisión como imponiendo el reconocimiento automático del hogar seguro en todo caso sobre liquidación de gananciales en que se reclamare tal exención. La solución en equidad se abraza a la justicia de cada caso, sin generalizar".

[10] Cabe señalar que dicho Artículo extendió la decisión de Cruz Cruz v. Irizarry Tirado, ante, al ampliar el derecho a reclamar como hogar seguro la propiedad ganancial no sólo mientras los hijos del matrimonio sean menores de

(Continúa . . .)

El cónyuge a quien por razón de divorcio se le concede la custodia de los hijos del matrimonio, que sean menores de edad, que estén incapacitados mental o físicamente sean estos mayores o menores de edad o que sean dependientes por razón de estudios, hasta [los] veinticinco años de edad, tendrá derecho a reclamar como hogar seguro la vivienda que constituyó el hogar del matrimonio y que pertenece a la sociedad de gananciales....

La propiedad ganancial que constituye el hogar seguro no estará sujeta a división mientras dure cualesquiera de las condiciones en virtud de las cuales se concedió. Disponiéndose que el derecho a hogar seguro podrá reclamarse desde que se necesitare, pudiendo ser reclamado en la demanda de divorcio, durante el proceso, o luego de decretarse el mismo. <u>Una vez reclamado, el juzgador determinará lo que en justicia procede de acuerdo con las circunstancias particulares de cada situación</u>. 31 L.P.R.A. sec. 385a. (énfasis suplido).

Como podemos notar, la referida disposición estatutaria estableció claramente que cuando se reclama el derecho cobijado en éste el juzgador deberá determinar "<u>lo que en justicia proceda</u>". Es decir, el legislador entendió, al igual que la jurisprudencia desarrollada hasta el momento, que el derecho a reclamar la propiedad ganancial como hogar seguro <u>no</u> debía otorgarse en forma automática.

El peticionario argumenta que, de acuerdo al texto del Artículo 109-A, la <u>única</u> situación de hechos en que se reconoce el derecho a hogar seguro en casos de divorcio es cuando la propiedad que se reclama como tal pertenece a la sociedad legal de gananciales. Entiende el peticionario

---

edad, sino, además, mientras hayan hijos incapacitados y mientras los hijos sean dependientes por razón de estudio.

que aplicar los supuestos de equidad a los hechos del caso ante nos es erróneo, ya que la Ley no deja dudas sobre su carácter restrictivo. No le asiste la razón. Veamos por qué.

Como mencionáramos anteriormente, desde la inclusión del Artículo 109-A en nuestro Código Civil, esta jurisdicción reconoció expresamente que el cónyuge custodio de los hijos menores, incapacitados, o dependientes por razón de estudio, puede reclamar como hogar seguro la propiedad ganancial que se utilizó como vivienda familiar. De esta forma se dio carácter de Ley a lo que ya había sido reconocido por este Tribunal a través de la jurisprudencia interpretativa de la Sección 3 de la Ley de Hogar Seguro.

Aunque el texto del Artículo 109-A reconoce un derecho a reclamar como hogar seguro la vivienda conyugal perteneciente a la sociedad de gananciales, ello no significa que este Tribunal, por equidad o por razones de política pública, esté impedido de reconocer dicho derecho en otras situaciones de hecho. Precisa recordar que el derecho a hogar seguro en esencia emana de la Ley de Hogar Seguro, ante. Por esta razón, desde antes de la inclusión del referido Artículo 109-A, este Tribunal utilizó las disposiciones de esta Ley para resolver las controversias sobre la atribución de la vivienda familiar en casos de divorcio. De igual forma, no podemos perder de perspectiva que la jurisprudencia, que le sirvió de base al legislador

al aprobar el Artículo 109-A, se desarrolló utilizando las Secciones 1 y 3 de la Ley de Hogar Seguro.

De lo anterior, a nuestro juicio, se puede colegir que el efecto principal que tuvo el Artículo 109-A fue disponer que la propiedad ganancial puede ser reclamada como hogar seguro por el cónyuge custodio de los hijos. Es decir, tanto este Artículo como la Ley de Hogar Seguro deben ser utilizadas e interpretadas conjuntamente. Sobre este particular debemos destacar el Artículo 18 del Código Civil, 31 L.P.R.A. sec. 18, en tanto en cuanto dispone que "[l]as leyes que se refieren a la misma materia o cuyo objeto sea el mismo, deben ser interpretadas refiriendo las unas a las otras, por cuanto lo que es claro en uno de sus preceptos pueda ser tomado para explicar lo que resulte dudoso en otro." Este Artículo establece el principio de *in pari materia*, por el cual tanto el historial legislativo y social de la ley, como los estatutos sobre las mismas materias, deben ser interpretados a los fines de lograr el propósito legislativo. Véase: Riley v. Rodríguez Pacheco, 124 D.P.R. 733 (1989); Morales v. Adm. Sistemas de Retiro, 123 D.P.R. 589 (1989). Las leyes deben interpretarse y aplicarse a tono con el propósito social que las inspira. Morales v. Adm. Sistemas de Retiro, ante, a la pág. 595. Además, es principio reiterado de nuestro ordenamiento que las leyes se interpretan dentro del contexto general en que hayan sido redactados, en forma integral y no tomando sus

disposiciones aisladamente y fuera del contexto en que las mismas se redactaron. Opinión del Secretario de Justicia de Núm. 27 de 1988.

Por otro lado, el Artículo 109-A no contiene una cláusula derogatoria expresa sobre las disposiciones contenidas en la Ley de Hogar Seguro. De igual forma, ambas legislaciones no son en ningún sentido contrarias o irreconciliables, por lo que no cabe hablar de derogación tácita. Véase: Artículo 6 del Código Civil, 31 L.P.R.A. sec. 6.

Además, debe mantenerse presente que la situación a la que hoy nos enfrentamos --en la cual ocurre un divorcio; uno de los cónyuges adviene custodio de los hijos menores, y la vivienda conyugal pertenece a una comunidad de bienes compuesta por ambos ex-cónyuges-- nunca antes había sido planteada ante este foro judicial. Es decir, el legislador al codificar lo resuelto por este Tribunal en Cruz Cruz v. Irizarry Tirado, ante, no tuvo la oportunidad de reglamentar la situación ante nos. Recordemos que el legislador no puede prever ni dar solución a todas las situaciones que la vida contempla. McCrilis v. Autoridad de la Navieras de Puerto Rico, 123 D.P.R. 113 (1989).

Somos del criterio, en síntesis, que las disposiciones estatutarias sobre hogar seguro, y la jurisprudencia interpretativa del mismo, deben verse como un todo. En otras palabras no podemos enfocar nuestra

atención únicamente en el Artículo 109-A <u>sin tomar en consideración la Ley de Hogar Seguro y la jurisprudencia que se ha desarrollado sobre este tema</u>. No hay duda que las razones en equidad y de política pública que este Tribunal ha desarrollado sobre el tema del hogar seguro <u>continúan vigentes</u> y pueden, por lo tanto, aplicarse al caso de autos.

El peticionario sostiene que el antes mencionado Artículo 109-A no aplica a los hechos de este caso, por razón de no tratarse de una sociedad de gananciales. Asumiendo, sin resolverlo, que su premisa fuera correcta, ello no varía la situación ante nos, por cuanto siempre tendríamos que acudir a lo dispuesto en el Artículo 7 del Código Civil, 31 L.P.R.A. sec. 7.

En otras palabras, si asumiéramos, como pretende el peticionario, que el Artículo 109-A no aplica ya que estamos ante una propiedad perteneciente a una comunidad de bienes --habida antes del matrimonio-- y no ante una propiedad perteneciente a una sociedad de gananciales, entonces, de acuerdo al Artículo 7, ante, necesariamente tendríamos que recurrir a la equidad.[11]

Debemos mantener presente, por último y a manera de resumen, que  dentro del desarrollo jurisprudencial del tema de hogar seguro, y de acuerdo a los supuestos de

---

[11] Como es sabido, el Artículo 7 del Código Civil dispone, en lo aquí pertinente, que "[c]uando no haya ley aplicable al caso, el tribunal resolverá conforme a equidad...."

equidad, una de las razones medulares para el reconocimiento del mismo en una propiedad ganancial --cuando ocurre un divorcio y existen menores de edad-- lo ha sido el que el derecho a hogar seguro no afecta la titularidad, ni es un título adicional de propiedad. Reiteradamente hemos establecido que el reconocimiento del hogar seguro en estos caso no crea un nuevo título de dominio en el terreno, ni tampoco fortalece ni ensancha el ya existente. Ello debido a que es el uso de la propiedad, y no el título, el que cambia. Vega Acosta v. Tribunal Superior, 89 D.P.R. 408, 412 (1963); González v. Corte Municipal, 54 D.P.R. 18, 20 (1938); Carrillo v. Santiago, ante. Cónsono con lo anterior, hemos reconocido que el límite de la exención de hogar seguro establecida en la Sección 1 de la Ley de Hogar Seguro, ante, no opera en casos de reconocimiento de este derecho a favor del jefe de familia cuando ocurre un divorcio y existen hijos menores. En tal virtud, en Cruz Cruz v.Irizarry Tirado, ante, a la pág. 661, establecimos que:

> El límite de $1,500 señalado por la Sec. 1851 del Título 31, Leyes de Puerto Rico, a la exención de hogar seguro opera exclusivamente contra acreedores del jefe de familia, mas no restringe ni representa el valor del hogar seguro que en caso de divorcio se conceda a uno de los cónyuges, porque en esta última eventualidad no hay transmisión de dominio sobre el inmueble ni alteración del título de propiedad, sino una autorización por el tribunal para uso del inmueble en satisfacción de una legítima necesidad de la familia. (citas omitidas y énfasis suplido).

Otra de las razones en equidad por la que hemos reconocido el derecho a hogar seguro en la propiedad ganancial lo ha sido el supuesto de que la preservación de éste para beneficio del grupo formado por madre e hijos tiene primacía sobre el derecho de propiedad del cónyuge en los activos de la disuelta sociedad conyugal. Ello claramente se desprende de lo expresado en Cruz Cruz v. Irizarry Tirado, ante, a la pág. 660-661 (1978) donde concluimos:

> La preservación del hogar seguro familiar para beneficio del grupo formado por madre e hijos tiene primacía sobre el derecho de propiedad del cónyuge en los activos de la disuelta sociedad conyugal. Su reclamación de gananciales en la vivienda que aloja a esta familia quedará paralizada por el tiempo que subsistan las circunstancias que le dan calidad de hogar seguro y mientras la recta razón de equidad ampare el derecho de sus ocupantes. Hemos reconocido que el derecho de dominio no es atribución absoluta de su titular y que está supeditado a intereses sociales de orden superior, significativamente la protección de la vivienda. (énfasis suplido).

Ahora bien, es cierto que en la mayoría de los casos de divorcios en los que hemos reconocido el derecho a hogar seguro estaba envuelta una propiedad ganancial. Sin embargo, ello no significa que en otras circunstancias no hayamos reconocido dicho derecho. A esos efectos, en Irizarry Quiles v. García Sanabria, 58 D.P.R. 280 (1941), establecimos que procedía el reclamo de hogar seguro por parte de la madre custodio de los hijos, aun cuando la propiedad se encontraba inscrita a nombre de los hijos. Expresamos en dicho caso que:

> El demandante, con la demandada y sus hijos, tenían constituido su hogar sobre la propiedad que 'poseía legalmente' aun cuando el título estuviera inscrito a nombre de dos de sus hijos, y dicha propiedad estaba ocupada por él y su familia como su residencia, hasta que él la abandonó, continuando entonces la demandada residiendo allí hasta el presente. Irizarry Quiles v. García Sanabria, ante, a la pág. 284.

Por otro lado, es correcto que, en Quiñones v. Reyes, 72 D.P.R. 304, 308 (1951), este Tribunal resolvió que si la propiedad que sirvió como vivienda matrimonial era privativa en su totalidad, entonces no cabía hablar de hogar seguro. Es de notar, sin embargo, que este Tribunal basó su dictamen, en el citado caso, en que la sociedad de gananciales utilizó la propiedad privativa en carácter de arrendataria y ya este mismo Tribunal había resuelto que no cabe reconocer el derecho a hogar seguro en los arrendamientos. Dicho caso se distingue de la situación ante nos ya que aquí tenemos un inmueble propiedad de ambos cónyuges, y no un inmueble privativo. Aunque se puede argumentar que cada participación de los cónyuges en la comunidad de bienes habida antes del matrimonio es privativa en esencia, la propiedad como tal es de ambos. El que ambos cónyuges ocupen la propiedad en carácter de dueños es el aspecto relevante y medular para conceder el derecho a hogar seguro en este tipo de caso. A esos efectos, en el caso de Quiñones v. Reyes, ante, a la pág. 307, resolvimos que "cuando [los cónyuges] tienen establecida su residencia en una propiedad perteneciente a

la sociedad conyugal, <u>como la viven en concepto de dueños al decretarse la ruptura del matrimonio, la ley permite que uno de ellos continué disfrutando el derecho de hogar seguro sobre la propiedad</u>." (énfasis suplido).

Más importante aún, la política pública y los intereses sociales del más alto rango han sido corolarios de las razones en equidad que han llevado a este Foro a reconocer el derecho a hogar seguro. En reiteradas ocasiones este Tribunal ha establecido, como política pública del Estado, la promoción del bienestar y el mejor interés de los menores. <u>Pérez, Roma v. Poc. Esp. Rel. De Fam.</u>, 148 D.P.R. 201 (1999); <u>Medina v. Tribunal Superior</u>, 104 D.P.R. 346 (1975). Hemos reconocido que este bienestar, cuando los menores han pasado por el trauma de ver desmembrada a su familia inmediata, requiere que se les brinde, dentro de lo posible, <u>un ambiente familiar constante, continuo y estable</u>. Véase: <u>Santana Medrano v. Acevedo Osorio</u>, 116 D.P.R. 298, 300-301 (1985). Además, ligado al bienestar de los menores se encuentra su derecho a gozar de un hogar donde vivir. Igualmente, la protección de la familia también ejerce un papel importante en la política pública que este Tribunal ha desarrollado como parte de las responsabilidades del Estado. <u>Cruz Cruz v. Irizarry Tirado</u>, ante.

En virtud de estos mismos principios es que hemos reconocido el derecho a hogar seguro en casos de divorcio antes de que la Asamblea Legislativa incluyera el Artículo

109-A en nuestro Código Civil. A esos efectos, en <u>Carrillo</u>

<u>v. Santiago</u>, ante, indicamos que:

> En Puerto Rico ... de acuerdo con la ley aprobada
> en 12 de marzo de 1903, 'en caso de divorcio el
> tribunal que lo conceda <u>podrá disponer del hogar</u>
> <u>seguro según la equidad del caso</u>.' Es lo que ha
> hecho la corte de distrito: ajustarse a los
> principios de equidad para asegurar a la esposa
> la mitad pro indivisa de la casa poseída como
> hogar seguro <u>y proteger a los hijos del</u>
> <u>demandante hasta que lleguen a la mayoría de</u>
> <u>edad</u>. (énfasis suplido).

Asimismo, en <u>Cruz Cruz v. Irizarry Tirado</u>, ante, a

las págs. 660-661, reiteramos que "en Puerto Rico, como en

toda sociedad civilizada, <u>hay un eminente interés social</u>

<u>en proteger y fomentar la adquisición por cada familia de</u>

<u>una vivienda segura</u>, cómoda y adecuada, reflejado en una

política pública de claros perfiles en la profusa

legislación aprobada a lo largo de los años." (citas

omitidas y énfasis suplido).

<u>En fin</u>, cualquiera que sea la forma en que analicemos

el asunto ante nuestra consideración, <u>la equidad continúa</u>

<u>siendo el eje y enfoque de la discusión</u>.

-B-

Dentro del marco doctrinal anteriormente esbozado,

pasamos a analizar la situación de hechos ante nos. <u>Ello</u>

<u>con el fin de determinar si las razones en equidad y de</u>

<u>política pública utilizadas para resolver este tipo de</u>

<u>controversia</u>, y esgrimidas por el legislador para crear el

Artículo 109-A, ante, <u>se encuentran presentes en el caso</u>

de autos y, por lo tanto, ameritan que reconozcamos el derecho a reclamar la propiedad en cuestión como hogar seguro.

En primer lugar, y para efectos de la disposición del hogar seguro, somos del criterio que una propiedad adquirida bajo una comunidad de bienes, como la presente en este caso, es sustancialmente similar a una propiedad adquirida bajo el régimen de la sociedad de gananciales. En cuanto a la sociedad de gananciales se refiere, el Artículo 1322 del Código Civil, 31 L.P.R.A. sec. 3697, indica que "[e]l remanente líquido de los bienes gananciales se dividirá por mitad entre marido y mujer o sus respectivos herederos." (énfasis suplido). De igual forma, en la escritura de compraventa de la propiedad inmueble aquí en controversia se dispuso claramente que la propiedad pertenecería en un cincuenta por ciento (50%) para cada cónyuge, es decir por mitad. Como señaláramos anteriormente, los casos donde hemos resuelto que procede el reclamo del derecho a hogar seguro en la vivienda perteneciente a la sociedad de gananciales, lo que se ha tomado en consideración es que la vivienda pertenezca a ambos cónyuges. Véase: Quiñones v. Reyes, ante, a la pág. 307.

En segundo lugar, y como mencionáramos anteriormente, en el caso de autos el peticionario y la recurrida adquirieron, en común pro indiviso, una propiedad cuatro (4) días antes de contraer matrimonio. No existe

controversia en cuanto a que dicha propiedad sirvió como el hogar matrimonial por diez (10) años, que fue donde procrearon a su hija y, además, que es la única propiedad que la niña conoce como su hogar. Además, de los autos no surge que la madre custodio tenga otros medios de proveer un techo para esta menor.

En virtud de lo anterior, resolvemos que <u>no</u> existe argumento jurídico válido alguno que nos persuada a no reconocer el derecho a hogar seguro en el caso ante nuestra consideración. <u>Al contrario, la equidad que</u> <u>gobierna el presente caso haya amplia base en nuestro</u> <u>ordenamiento para reconocer la propiedad aquí en</u> <u>controversia como hogar seguro de esta jefe de familia</u>. El hecho de que: sea una <u>propiedad de ambos cónyuges</u>; que el reconocimiento del hogar seguro no afecta la titularidad; que la propiedad se <u>utilizó</u> como el <u>hogar conyugal</u>; que es la <u>única propiedad que la menor ha conocido</u>; y que el derecho a dominio está supeditado a los intereses sociales de proteger a los menores, a la familia, y al hogar donde estos residen, demuestran que el tribunal de instancia <u>no</u> abusó de su discreción.

- C -

Ahora bien, el peticionario argumenta que la equidad no puede aplicarse en forma automática. Arguye que el foro primario no realizó un proceso de evaluación para aplicar la misma, sino que concedió la propiedad en cuestión en

concepto de hogar seguro de forma automática. Tampoco le asiste la razón. Veamos por qué.

Dicho foro, inicialmente, consideró la controversia sobre el reclamo de hogar seguro cuando el peticionario solicitó que se dictara sentencia sumaria a su favor. En ese momento el foro primario entendió que debía celebrar primero la vista de divorcio a los fines de que se desfilara prueba acerca de la intención de las partes en establecer la vivienda conyugal en el inmueble en cuestión. Luego de esto, el tribunal de instancia realizó una vista adicional precisamente para dirimir la controversia sobre el reclamo de hogar seguro. Una vez celebrada la vista, y considerando la intención de las partes al momento de establecer su hogar conyugal, es que dicho foro reconoció el hogar seguro en la vivienda perteneciente a la comunidad de bienes.

La resolución emitida por el foro de instancia demuestra su proceso de evaluación y, además, que el mismo se fundamentó en los supuestos de equidad. A esos efectos, el foro primario dispuso que "[n]inguna ley puede limitar la función al [sic] juzgador privándole de aplicar la equidad a la situación que nos ocupa y resolver lo que en justicia proceda. El más poderoso instrumento para hacer justicia reservado a los jueces es la discreción. La equidad nació precisamente de la necesidad de atemperar el rigor de la norma mediante recurso a la conciencia del

juzgador." (citas omitidas). Más aún, dicho foro expresó
que:

> Hemos oído el testimonio de las partes, y
> entendemos que en esta particular situación donde
> las partes constituyeron su hogar conyugal desde
> el primer momento del matrimonio a escasos días
> de la compra de la propiedad debemos aplicar la
> equidad.
> ....
> En este caso en particular tenemos a una madre
> custodio que ha realizado el pago de la hipoteca
> desde la separación de las partes y que ese hogar
> es el único sitio donde la menor ha crecido y
> desarrollado.

De acuerdo a lo anteriormente esbozado, en este caso
el foro sentenciador dispuso del derecho a hogar seguro de
acuerdo a la equidad utilizando para ello su sana
discreción. Esta actuación fue correcta en derecho. No
erró el Tribunal de Apelaciones al denegar el auto
interpuesto por el peticionario y de esta forma confirmar
la actuación del tribunal de instancia al aplicar los
supuestos de equidad al caso ante nos y reconocer así el
derecho a hogar seguro de la recurrida.[12]

---

[12] Finalmente, el reconocimiento del derecho a reclamar la
propiedad aquí en cuestión como hogar seguro encuentra
apoyo en otras jurisdicciones, en específico, el estado de
Illinois. Un estudio minucioso de nuestra Sección 3 de la
Ley de Hogar Seguro ha llevado a este Tribunal a concluir
que el mismo es sustancialmente idéntico a las
disposiciones sobre hogar seguro del mencionado estado.
Véase: López Rudón v. López, 48 D.P.R. 324 (1935);
Carrillo v. Santiago, ante. Específicamente, la Sección
12-905 de la Ley de Hogar Seguro del estado de Illinois,
735 ILCS 5/12-905, dispone lo siguiente: "Disolución del
Matrimonio. En caso de disolución de un matrimonio, la
corte que otorgue la disolución del matrimonio puede
disponer del hogar seguro de acuerdo a la equidad del
caso". (traducción nuestra). Es por ello que los

(Continúa . . .)

precedentes provenientes de dicha jurisdicción tienen fuerza persuasiva en este caso. Peña Clos v. Cartagena Ortiz, 114 D.P.R. 576, 588 (1983); Pueblo v. Matos, 83 D.P.R. 335, 340 (1961). Recordemos que al adoptar una regla o estatuto de otra jurisdicción presumimos que el legislador lo ha hecho teniendo el beneficio de la interpretación brindada por los tribunales de dicha jurisdicción. Nieves v. Jones, Jefe Interino Penitenciaría, 72 D.P.R. 287, 290 (1951); Padilla v. Vidal, 71 D.P.R. 517, 521 (1950).

Anteriormente esta Curia ha recurrido a la jurisprudencia interpretativa de dicho Estado para casos que envolvían la disposición de la vivienda familiar cuando ocurre un divorcio donde existen hijos menores y uno de los cónyuges adviene custodio de ellos. Véase: Carrillo v. Santiago, ante. Con relación al caso ante nos, la jurisprudencia de Illinois apoya el precepto de que, en una comunidad de bienes, la posesión y/o ocupación del hogar conyugal reclamado como hogar seguro puede ser atribuido a la parte a quien se le concede la custodia de los hijos menores de edad. A esos efectos, en Myers v. Myers, 366 N.E. 2d 1114 (1977), la Corte Suprema de Illinois dispuso "[t]he trial court has the power to grant the right of occupation of the homestead property to the party into whose custody the minor children are given." En dicho caso los ex-cónyuges eran co-propietarios de la propiedad reclamada como hogar seguro.

En cuanto a la parte del estatuto de Illinois, el cual es sustancialmente idéntico al de Puerto Rico, la Corte Suprema de dicho estado, en Klebba v. Klebba, 246 N.E. 2d 681 (1969), expresó que:

Section 5 of the Homestead Act (Ill. Rev. Stat., 1967, Chap. 52, Sec. 5) States: 'In case of a divorce, the court granting the divorce may dispose of the homestead estate according to the equities of the case.' Under this grant of authority, it has been held that is within the power of the court to grant the right to occupy the homestead property to either party. Thus the court may award the right to occupy the homestead to the party into whose custody the children are given, even though the title thereto is in the name of the other party. (énfasis suplido).

Resulta, pues, evidente que bajo la Ley de Illinois la parte a quien se le adjudica la custodia de los niños, tiene derecho a ocupar el hogar seguro. Ello independientemente de a quién pertenezca la propiedad que

(Continúa . . .)

III

En su segundo señalamiento de error el peticionario arguye que el reconocimiento del derecho a hogar seguro bajo el Artículo 109-A no puede ir por encima de su derecho como comunero a solicitar la división de la comunidad de bienes. Sin embargo, tanto las disposiciones del propio Artículo 109-A, ante, como los intereses sociales y de política pública que atañen este tema, resultan suficientes para descartar este argumento. Veamos por qué.

Como es sabido, una comunidad de bienes surge cuando la propiedad de una cosa o un derecho pertenece pro indiviso a varias personas. A falta de contratos o disposiciones especiales, la comunidad se rige por las disposiciones del Código Civil.[13] Por su parte, el Artículo 334 del Código Civil, 31 L.P.R.A. sec. 1279, dispone que "[n]ingún copropietario está obligado a permanecer en la comunidad." Por otro lado, la sociedad legal de gananciales es el régimen económico dispuesto por Ley que surge una vez se contrae matrimonio.[14] Dicho régimen

---

se reclama como hogar seguro. Como señaláramos anteriormente, el hogar seguro, tanto en Puerto Rico como en Illinois, es una cuestión de quién ocupará u obtendrá la posesión de un inmueble que sirvió de hogar a la familia durante el matrimonio, no es una cuestión de a quién se le adjudica la propiedad.

[13] Artículo 326, 31 L.P.R.A. sec. 1271.

[14] Artículo 1295 y 1296 del Código Civil, 31 L.P.R.A. secs. 3621 y 3622, respectivamente.

concluye una vez se disuelve el matrimonio.[15] Ahora bien, disuelto el matrimonio, los cónyuges pasan a ser comuneros de una comunidad de bienes mientras dure el estado de indivisión de la sociedad. Esta comunidad, a su vez, se rige por las disposiciones aplicables a la comunidad de bienes en el Código Civil. Asoc. Residentes Urb. Sagrado Corazón, Inc. v. Arsuaga Álvarez, res. el 24 de septiembre de 2003, 2003 T.S.P.R. 141. Soto López v. Colón Meléndez, 143 D.P.R. 282, 287 (1997). Una propiedad perteneciente a la sociedad de gananciales pasa a ser propiedad de dicha comunidad de bienes compuesta por los ex-cónyuges, una vez el matrimonio se disuelve mientras no se divida la extinta sociedad. Asoc. Residentes Urb. Sagrado Corazón, Inc. v. Arsuaga Álvarez, ante.

El Artículo 109-A establece claramente que cuando la "propiedad ganancial constituye el hogar seguro no estará sujeta a división mientras dure las condiciones por la cuales se concedió." (énfasis suplido). De acuerdo a lo esbozado, resulta lógico interpretar que el referido Artículo tampoco permite solicitar la división de la comunidad de bienes, la cual comenzó una vez se decretó el divorcio. Resolver de otra forma significaría que, una vez decretado el divorcio e inexistente la sociedad de gananciales, el ex-cónyuge custodio no podría reclamar el derecho a hogar seguro bajo el Artículo 109-A porque la

---

[15] Artículo 1315 del Código Civil, 31 L.P.R.A. sec. 3681.

propiedad pasó a ser parte de una comunidad de bienes y <u>no</u> de la sociedad de gananciales. Ello resulta, no sólo absurdo, sino, en contra de la propia letra del Artículo 109-A, ante, el cual dispone, en lo aquí pertinente, que el derecho a hogar seguro podrá reclamarse "desde que se necesitare pudiendo ser reclamado en la demanda de divorcio, durante el proceso, o <u>luego</u> de decretarse el mismo." (énfasis suplido). <u>Resultaría, igualmente ilógico y absurdo, resolver lo contrario bajo los hechos particulares del presente caso.</u>

Por otro lado, enfatizamos que los intereses sociales y de política pública esbozados a través de esta Opinión tienen <u>primacía</u> sobre cualquier interés propietario que tenga uno de los ex-cónyuges en la propiedad que sirvió de vivienda familiar y que pertenece a ambos. <u>Cruz Cruz v. Irizarry Tirado</u>, ante. Ello indistintamente de que la propiedad se haya adquirido bajo la sociedad de gananciales o bajo una comunidad de bienes --compuesta por ambos cónyuges-- antes del matrimonio.

Por todo lo anteriormente expuesto, resolvemos que el derecho de un ex-cónyuge, comunero de una propiedad, adquirida bajo una comunidad de bienes con su ex-cónyuge, <u>está subordinado</u> al derecho del ex-cónyuge custodio de los hijos menores a reclamar la referida propiedad como hogar seguro. Ello siempre y cuando los intereses sociales esbozados en esta Opinión, y los supuestos de equidad, así apoyen dicho reclamo. No erró el tribunal de instancia,

como tampoco el Tribunal de Apelaciones, al reconocer que los derechos del peticionario como comunero están supeditados al derecho a hogar seguro en este caso.

IV

El cuarto señalamiento de error del peticionario plantea que erró el Tribunal de Apelaciones al concluir que su reclamo sobre la pensión alimenticia fue tardío.

El peticionario argumentó ante el foro apelativo intermedio que el tribunal de instancia erró al no modificar su pensión alimentaria una vez reconoció el hogar seguro a favor de la recurrida. Fundamentó su argumento en que dicha pensión se determinó utilizando los criterios de la Ley de Sustento de Menores, ante, uno de los cuales lo es la habitación. Siendo ello así, entiende el peticionario que el reconocimiento del hogar seguro equivale a una parte de la pensión que éste se encuentra pagando como parte de su obligación de proveer alimentos. Alegó ante el Tribunal de Apelaciones que como el tribunal de instancia reconoció tal derecho, éste venía obligado a automáticamente reducir la pensión y, al no hacerlo, así erró.

Al acudir el peticionario ante el Tribunal de Apelaciones, dicho foro apelativo entendió que lo que el peticionario intentaba revisar --vía *certiorari*-- era la pensión en si. En virtud de ello, concluyó que, en vista de que la resolución que estableció la pensión fue

notificada y archivada en autos el 22 de junio de 2001 y de que el recurso ante el foro apelativo se interpuso pasado los treinta (30) días desde esa fecha, carecía de jurisdicción para entender en el mismo.

No hay duda que, una vez se decretó el hogar seguro mediante la resolución notificada el 15 de noviembre de 2001, la misma tuvo el efecto de alterar el cuadro fáctico que se utilizó al momento de estipular la pensión alimentaria. En virtud de ello, el peticionario correctamente argumenta que no es hasta ese momento que éste se encuentra en posición de levantar que la pensión alimentaria debe ser reducida. Sin embargo, lo que procedía en este caso era solicitar, ante el foro de instancia, que la pensión alimentaria se modificara demostrando que hubo un cambio sustancial en las circunstancias de su caso ya que el hogar seguro fue atribuido a su ex-cónyuge.

En el caso ante nos la disposición sobre pensión alimentaria que se incluyó en la sentencia emitida por el foro de instancia el 8 de junio de 2001, y notificada el 22 de junio de 2001, estuvo basada en una estipulación que hicieran las partes ante el Examinador de Pensiones Alimentarias. En reiteradas ocasiones hemos establecido que, luego de aprobado un convenio o una estipulación sobre la pensión alimentaria, ésta puede modificarse si ocurre "un cambio sustancial en las circunstancias que dieron lugar u originaron el mismo". Véase: Negrón Rivera

y Bonilla, Ex parte, 116 D.P.R. 61, 77 (1987). Consistentemente hemos sostenido la facultad judicial para modificar decretos judiciales previos sobre pensiones alimenticias según lo requieran los cambios de circunstancias que así lo ameriten. S. Torres Peralta, *La Nueva Ley Especial de Sustento de Menores*, 49 (Núms. 34) Rev. C. Abo. P.R. 115 (1988). Valencia, Ex parte, 116 D.P.R. 909 (1986). Es decir, una resolución o sentencia, en la cual se imponga el pago de alimentos, siempre está sujeta a ser modificada o reajustada al demostrarse que las condiciones han variado. Ello es así, incluso, cuando los alimentos han sido estipulados. Véase: Brea v. Pardo, 113 D.P.R. 217 (1982).

Si el peticionario entiende que lo que procede es que se ajuste, modifique o reduzca la pensión alimentaria, ya que posteriormente se le reconoció un derecho a hogar seguro a la recurrida, entonces debe acudir ante el foro de instancia, pues es éste quien tiene jurisdicción para dilucidar esta controversia. De otro modo, el peticionario estaría revisando --vía *certiorari*-- una sentencia sobre pensión alimentaria en forma tardía. Ello no es posible. Si una segunda resolución cambia el cuadro fáctico que se utilizó para disponer una pensión alimentaria original, lo que procede en derecho es que se solicite una revisión y/o modificación de la referida pensión, ante el Tribunal de Primera Instancia.

No erró, en consecuencia, el Tribunal de Apelaciones al resolver que carecía de jurisdicción sobre este planteamiento. No obstante, el peticionario no queda desprovisto de remedio. Procede que haga el planteamiento formal sobre modificación de la pensión alimentaria ante el tribunal de instancia, mediante los procedimientos antes esbozados.[16]

V

Por los fundamentos que anteceden, procede la confirmación, tanto de la resolución emitida el 22 de octubre de 2001 por el Tribunal de Primera Instancia, Sala Superior de Carolina, como del dictamen del Tribunal de Apelaciones, denegatorio del recurso de *certiorari* radicado ante dicho foro judicial por el peticionario Ángel Pérez Santiago.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[16] Precisa aclarar que no estamos resolviendo los méritos del reclamo del peticionario. Únicamente aclaramos cuál es el curso de acción a tomar en estos casos.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Miriam Rodríguez Ramos

    Recurrida

       vs.                CC-2002-291  CERTIORARI

Ángel Luis Pérez Santiago

    Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 14 de abril de 2004

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria tanto de la resolución emitida el 22 de octubre de 2001 por el Tribunal de Primera Instancia, Sala Superior de Carolina, como del dictamen del Tribunal de Apelaciones, denegatorio del recurso de *certiorari* radicado ante dicho foro judicial por el peticionario Ángel Pérez Santiago.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre con el resultado excepto en cuanto a lo dispuesto en el acápite IV de la Opinión; y, por ende, en lo pertinente a ello en el acápite V. Sobre este aspecto del dictamen del Tribunal, el Juez Asociado señor Fuster Berlingeri dispondría ya que se proceda a la reducción de la pensión alimentaria acordada inicialmente por las partes, para restarle cualquier porción de ésta que correspondiese a la vivienda de la menor. Ello debido a que el peticionario no está obligado al pago de vivienda dos veces. El Juez Asociado señor Hernández Denton no intervino.

                        Patricia Otón Olivieri
                  Secretaria del Tribunal Supremo