Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ANA YVETTE CACHO GONZÁLEZ<br><br>**RECURRIDA**<br><br>v.<br><br>VLADIMIR ILICHT VÁZQUEZ CLAUDIO<br><br>**PETICIONARIO** | KLCE202400692 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón, Sala de Familia y Menores<br><br>Caso Núm. BY2021RF00765<br><br>Sobre: Custodia-Monoparental o Compartida, Alimentos-Menores de Edad |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Pagán Ocasio, juez ponente

# RESOLUCIÓN

En San Juan, Puerto Rico, a 11 de julio de 2024.

## I.

El 24 de junio de 2024, el señor Vladimir Ilich Vázquez Claudio (señor Vázquez Claudio o peticionario) presentó un recurso de *Certiorari* ante nos en el que solicitó que revisemos una *Orden*[1] emitida por el Tribunal de Primaria Instancia, Sala Superior de Bayamón, Sala de Familia y Menores (TPI o foro primario) el 8 de abril de 2024, notificada y archivada en autos ese mismo día. Mediante el dictamen, el TPI le anotó la rebeldía al señor Vázquez Claudio y ordenó la continuación de los procedimientos ante la Examinadora de Pensiones Alimentarias (EPA) con la celebración de la vista final de alimentos en rebeldía, luego de determinar que el peticionario incumplió con la *Orden* emitida el 11 de marzo de 2024,

---

[1] Apéndice del recurso de *Certiorari,* pág. 26.

notificada y archivada en autos al siguiente día,[2] y, posteriormente, aclarada mediante la *Orden* del 27 de marzo de 2024, notificada y archivada en autos el mismo día.[3]

El 26 de junio de 2024, emitimos una *Resolución* en la que le concedimos a la señora Ana Yvette Cacho González (señora Cacho González o recurrida) un término de diez (10) días, contados a partir de la notificación de dicha *Resolución,* para exponer su posición sobre los méritos del recurso de *Certiorari,* según ordenado.

No obstante, aunque se le brindó la oportunidad de comparecer, la señora Cacho González no presentó su posición en torno a los méritos del recurso de *Certiorari,* según ordenado.

Por ende, damos por perfeccionado el recurso de epígrafe, y, en adelante, pormenorizaremos los hechos procesales atinentes a al recurso de *Certiorari.*

**II.**

El caso de marras tiene su génesis el 2 de mayo de 2021 cuando la señora Cacho González presentó una *Urgente Petición de Custodia Monoparental y Alimentos* (Urgente Petición)[4] en contra del señor Vázquez Claudio en concepto de custodia monoparental. Según arguyó, ella sostuvo una relación consensual con el señor Vázquez Claudio y procrearon a los mellizos SDLVC y MCVC, quienes nacieron el 26 de junio de 2017 en el estado de Massachusetts. Expuso que, en o cerca de abril de 2018, ella solicitó y obtuvo una orden de protección en contra del señor Vázquez Claudio, la cual fue expedida por un tribunal en Hull, Massachusetts. Arguyó, sin embargo, que, continúo viviendo un patrón de violencia doméstica y se vio obligada a ser la cuidadora principal y única protectora de sus hijos.

---

[2] *Íd.*, pág. 13.
[3] *Íd.*, págs. 16-17.
[4] Entrada Núm. 1 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Según se desprende de la Urgente Petición, desde el 24 de junio de 2020, fecha en la que alegadamente el señor Vázquez Claudio arrojó a la calle a la recurrida y sus gemelos, el peticionario incumplió con su obligación de alimentar y cubrir las necesidades de sus hijos. Al día de la presentación de la Urgente Petición, sostuvo la recurrida que el señor Vázquez Claudio solo había enviado $700.00 dentro de un término de diez (10) meses, y los abuelos maternos tuvieron que sufragar las necesidades de los menores. Expuso además que, el padre de los gemelos también incumplió con el horario determinado para la entrega y/o recogido de los niños; y carece de las capacidades protectoras, y las cualidades y la aptitud para satisfacer las necesidades biosociales de sus hijos y ejercer la custodia de los menores de forma responsable y libre de maltrato psicológico.

Por todo lo anterior, la señora Cacho González solicitó del foro primario (i) mantener la custodia monoparental *de facto* mientras se dilucidaban los procedimientos; (ii) referir a las partes a la Unidad Social para establecer relaciones filiales provisionales supervisadas, hasta la culminación de la investigación social; (iii) establecer un plan definido de relaciones paterno filiales para evitar y no perpetuar la violencia doméstica, una vez referidos a la Unidad Social y determinada la viabilidad y deseabilidad de las relaciones filiales; (iv) referir a las partes ante el EPA; y (v) conceder la custodia monoparental a la señora Cacho González.

Luego de varios trámites procesales, el 8 de junio de 2021, el señor Vázquez Claudio presentó una *Contestación a la Demanda.*[5] Por medio de esta, negó muchas de las alegaciones presentadas por la recurrida incluyendo que no incurrió en violencia doméstica, y que ambos padres eran los cuidadores y encargados de los menores.

---

[5] Entrada Núm. 16 del expediente digital del caso en el SUMAC.

Incluso alegó no haber incumplido con el horario de las relaciones filiales, y sostuvo que poseía la capacidad protectora, las cualidades y la aptitud para satisfacer las necesidades biopsicosociales de sus hijos y ejercer la custodia y patria potestad de los menores. Además, alegó que el caso había sido referido a la EPA y ya se había establecido una pensión provisional durante una vista celebrada. Por último, solicitó que el caso fuese referido a la Unidad Social para la otorgación de custodia compartida de los menores o, en su defecto, se le concedieran a él relaciones filiales amplias. Además, solicitó que se prohibiera el traslado de los menores fuera del país sin previa autorización del tribunal.

Posteriormente, el 7 de septiembre de 2022, el TPI emitió una *Orden*,[6] notificada y archivada en autos al siguiente día. En lo pertinente, el foro primario le apercibió al señor Vázquez Claudio que no permitiría su representación por derecho propio.

Luego de este apercebimiento, el señor Vázquez Claudio compareció mediante una serie de mociones pro se.[7]

El 18 de noviembre de 2022, el foro primario emitió una *Orden*,[8] notificada y archivada en autos el 21 de noviembre de 2022, por la que advirtió que la determinación del 7 de septiembre de 2022 era final y firme. Por ello, el foro *a quo* indicó que el señor Vázquez Claudio debía comparecer representado por abogado aun en los procesos post sentencia, como en los que se encontraban, y le apercibió que las mociones presentadas por derecho propio se tendrían por no presentadas.

A pesar de la advertencia del TPI, nuevamente, el señor Vázquez Claudio radicó una moción por derecho propio.[9]

---

[6] Entrada Núm. 161 del expediente digital del caso en el SUMAC.
[7] Entrada Núm. 163 del expediente digital del caso en el SUMAC; Entrada Núm. 168 del expediente digital del caso en el SUMAC; Entrada Núm. 170 del expediente digital del caso en el SUMAC; Entradas Núm. 186-188 del expediente digital del caso en el SUMAC.
[8] Entrada Núm. 190 del expediente digital del caso en el SUMAC.
[9] Entrada Núm. 194 del expediente digital del caso en el SUMAC.

Posteriormente, el 19 de diciembre de 2022, el TPI emitió una *Orden*, notificada y archivada en autos el 20 de diciembre de 2022. Por medio de esta, el foro primario le apercibió al señor Vázquez Claudio que, de continuar incumpliendo con las órdenes del Tribunal, podría ser sancionado.[10]

El 16 de enero de 2023, el TPI emitió una *Orden*, notificada y archivada en autos el 17 de enero de 2023, donde le apercibió al señor Vázquez Claudio que, de no comparecer dentro de un término de diez (10) días mediante su representante legal, le suspendería las relaciones paternofiliales como medida cautelar en protección de los menores de edad.[11]

A pesar de las reiteradas órdenes que lo impedían, el señor Vázquez Claudio continuó radicando mociones por derecho propio, en total desatención a lo ordenado por el foro recurrido.[12]

Posteriormente, el 8 de febrero de 2023, el foro primario emitió una *Orden*, notificada y archivada en autos el 9 de febrero de 2023. A través de esta, el TPI le advirtió al señor Vázquez Claudio que ya había tomado la determinación de no permitirle que se represente por derecho propio y que, de continuar con dicha práctica, le comenzaría a imponer severas sanciones por incumplimiento con las determinaciones del foro.[13]

Sin embargo, el señor Vázquez Claudio persistió en su conducta de presentar mociones sin representación legal.[14]

El 8 de marzo de 2023, el foro *a quo* emitió una *Orden*,[15] notificada y archivada en autos al siguiente día, por la cual resolvió que el señor Vázquez Claudio, conforme apercibido y debido a su

---

[10] Entrada Núm. 195 del expediente digital del caso en el SUMAC.
[11] Entrada Núm. 197 del expediente digital del caso en el SUMAC.
[12] Entrada Núm. 198 del expediente digital del caso en el SUMAC; Entrada Núm. 200 del expediente digital del caso en el SUMAC.
[13] Entrada Núm. 201 del expediente digital del caso en el SUMAC.
[14] Entrada Núm. 204 del expediente digital del caso en el SUMAC.
[15] Entrada Núm. 205 del expediente digital del caso en el SUMAC.

incumplimiento con la *Orden* del 8 de febrero de 2023, se le impuso $100.00 en sanciones.

Nuevamente, el señor Vázquez Claudio continuó radicando mociones sin representación legal.[16]

El 16 de marzo de 2023, TPI emitió una *Orden*, notificada y archivada en autos el 17 de marzo de 2023, donde resolvió lo siguiente:

> El Tribunal emitió al menos **cuatro (4) órdenes** en las cuales se le apercibió al Sr. Vladimir I. Vázquez Claudio que no permitiría escritos presentados por derecho propio sobre los méritos del presente caso y en al menos **dos (2)**, de dichas órdenes, se le apercibió al Sr. Vladimir I. Vázquez Claudio que de continuar incurriendo en dicha práctica sería sancionando. Además de dichas determinaciones, en al menos seis **(6) órdenes adicionales** el Tribunal le había concedido término al Sr. Vladimir I. Vázquez Claudio para que anunciara representación legal, ya que no permitiría que se representara por derecho propio, luego de realizar el correspondiente análisis de la Regla 9.4 de Procedimiento Civil.
>
> **Todas dichas órdenes fueron incumplidas**, a pesar de los apercibimientos realizados, y el Sr. Vladimir I. Vázquez Claudio ha continuado incurriendo en una conducta obstinada en abierto menosprecio a la autoridad y a las determinaciones de este Tribunal.
>
> Es por ello que el Tribunal entiende que la sanción impuesta no resulta ser excesiva, sino todo lo contrario, por lo que mantiene la misma. No obstante, se le concede al Sr. Vladimir I. Vázquez Claudio hasta el viernes, 16 de junio de 2023 para el pago de la misma.
>
> . . . .
>
> (Énfasis en el original).[17]

No obstante, el señor Vázquez Claudio presentó otra moción pro se.[18]

El 22 de junio de 2023, el TPI emitió una *Orden*, notificada y archivada en autos al siguiente día, por la cual le concedió al señor Vázquez Claudio un término final de veinte (20) días para pagar la sanción de $100.00 impuesta por medio de la *Orden* del 8 de marzo

---

[16] Entradas Núm. 206-207 del expediente digital del caso en el SUMAC.
[17] Entrada Núm. 208 del expediente digital del caso en el SUMAC.
[18] Entrada Núm. 216 del expediente digital del caso en el SUMAC.

de 2023. Además, le apercibió que el incumplimiento con ello podría conllevar la imposición de sanciones adicionales.[19]

El 28 de junio de 2023, el foro *a quo* emitió una *Orden*, notificada y archivada digitalmente ese mismo día, por la que tomó conocimiento sobre el pago de la sanción impuesta y dio por cumplida la *Orden* del 22 de junio de 2023.[20]

A pesar de los apercibimientos realizados, el señor Vázquez Claudio nuevamente incumplió con las órdenes del tribunal.[21]

El 5 de octubre de 2023, el foro primario emitió una *Orden*, notificada y archivada digitalmente en autos el mismo día, donde resolvió que había emitido varias órdenes y que no le iba a permitir al señor Vázquez Claudio representarse por derecho propio.[22]

Posteriormente, el 18 de octubre de 2023, el foro primario emitió una *Resolución*, notificada y archivada digitalmente en autos al siguiente día, donde, en lo pertinente, le concedió al señor Vázquez Claudio hasta el 26 de octubre de 2023 para anunciar su nueva representación legal, y le advirtió que ya había tomado una determinación final y firme a los efectos de no permitirle representarse por derecho propio. Concluyó el foro primario que se sostenía en dicha determinación, pues las razones expresadas en aquel entonces y el comportamiento inadecuado de éste en sus comparecencias escritas y presenciales en la sala lo precisaban.[23]

Aun así, el señor Vázquez Claudio presentó una moción por derecho propio, incumpliendo nuevamente lo ordenado por el foro primario.[24]

El 23 de octubre de 2023, el TPI emitió una *Orden*, notificada y archivada en autos el mismo día, por la cual le concedió al señor

---

[19] Entrada Núm. 220 del expediente digital del caso en el SUMAC.
[20] Entrada Núm. 223 del expediente digital del caso en el SUMAC.
[21] Entrada Núm. 239 del expediente digital del caso en el SUMAC; Entrada Núm. 241 del expediente digital del caso en el SUMAC.
[22] Entrada Núm. 244 del expediente digital del caso en el SUMAC.
[23] Entrada Núm. 250 del expediente digital del caso en el SUMAC.
[24] Entrada Núm. 252 del expediente digital del caso en el SUMAC.

Vázquez Claudio hasta el 10 de noviembre de 2023 para anunciar su representante legal. Le apercibió también que, de no cumplir con lo anterior, además de las sanciones apercibidas, el tribunal no le permitirá representarse por derecho propio, y estaría impedido de presentar prueba a su favor durante la vista de desacato.[25]

Sin embargo, a pesar de los apercibimientos realizados, el peticionario continuó radicando mociones sin representante legal.[26]

El 9 de noviembre de 2023, el TPI emitió una *Orden*, notificada y archivada digitalmente en autos, mediante la cual le concedió al señor Vázquez Claudio hasta el 10 de noviembre de 2023 para anunciar su representante legal con las consecuencias y apercibimientos realizados en la *Orden* del 23 de octubre de 2023.[27]

El foro primario emitió una *Resolución* el 13 de noviembre de 2023, notificada y archivada en autos el 15 de noviembre de 2023. Por medio de esta y en lo pertinente, el tribunal encontró al señor Vázquez Claudio incurso en desacato por incumplimiento con el pago de la proporción correspondiente de los gastos suplementarios o escolares, los cuales ascienden a $9,467.97. Sin embargo, conforme a los remedios disponibles en nuestro ordenamiento jurídico y no existiendo reparo de la señora Cacho González, el foro primario dejó en suspenso la emisión de la orden de arresto y le concedió al señor Vázquez Claudio un plan de pago de $394.50 mensuales por un término de 24 meses, comenzando a partir de diciembre del año 2023. También le impuso $300.00 en concepto de honorarios de abogados, a tenor con el Artículo 22 de la *Ley Orgánica de la Administración para el Sustento de Menores*, Ley Núm. 5 del 30 de diciembre de 1986, 8 LPRA sec. 521.[28]

---

[25] Entrada Núm. 253 del expediente digital del caso en el SUMAC.
[26] Entrada Núm. 254 del expediente digital del caso en el SUMAC.
[27] Entrada Núm. 255 del expediente digital del caso en el SUMAC.
[28] Entrada Núm. 258 del expediente digital del caso en el SUMAC.

El 14 de noviembre de 2023, el foro primario emitió una *Orden*, notificada y archivada digitalmente en autos el 15 de noviembre de 2023, mediante la cual, ante el incumplimiento con las órdenes del 23 de octubre de 2023 y 9 de noviembre de 2023, le impuso al señor Vázquez Claudio $150.00 en sanciones económicas.[29]

A pesar de lo resuelto por el TPI y las advertencias realizadas, el señor Vázquez Claudio presentó mociones pro se.[30]

Luego de varios trámites procesales, el 11 de marzo de 2024, el TPI emitió una *Orden*, notificada y archivada digitalmente en autos al siguiente día, por la cual aceptó la representación legal, y le concedió al representante legal del peticionario un término de veinte (20) días para que se familiarizara con el expediente y para que ambos representantes legales se reunieran para ponerse al tanto en cuanto a los asuntos pendientes y para auscultar la posibilidad de alcanzar acuerdos razonables que permitieran la continuación del caso de epígrafe y se pudieran adelantar los intereses y el mejor bienestar de los menores. De igual modo, advirtió que, de alcanzar algún acuerdo, se le debía informar al tribunal mediante moción conjunta.[31]

El 27 de marzo de 2024, el TPI emitió una *Orden*, notificada y archivada en autos digitalmente el mismo día. Mediante esta, el foro *a quo* aclaró que el aludido término de veinte (20) días concedido al representante legal del peticionario a través de la *Orden* del 11 de marzo de 2024 era para contestar cualquier asunto pendiente en el expediente judicial y para que ambos representantes legales se reunieran para auscultar la posibilidad de alcanzar acuerdos razonables permitiendo la continuación del caso de epígrafe,

---

[29] Entrada Núm. 259 del expediente digital del caso en el SUMAC.
[30] Entrada Núm. 261 del expediente digital del caso en el SUMAC; Entrada Núm. 263 del expediente digital del caso en el SUMAC.
[31] Apéndice del recurso de *Certiorari*, pág. 13.

adelantando los intereses y el bienestar de los menores. Por el contrario, advirtió dicho foro que, de no llegar a un acuerdo, el peticionario debía expresar su postura dentro del referido término.[32]

El 5 de abril de 2024, la señora Cacho González radicó una *Moción en Solicitud de Anotación de Rebeldía*, por la que, en lo pertinente, y a tenor con la Regla 45 de Procedimiento Civil, 32 LPRA Ap. V, R. 45, y la Regla 34.3 (b) de Procedimiento Civil, *supra*, R. 34.3 (b), solicitó del TPI que le anotara la rebeldía del peticionario. Apoyó su solicitud en que el representante legal del señor Vázquez Claudio incumplió con la *Orden* del 11 de marzo de 2024, y el peticionario pidió otra prórroga y se le concedió. Aun así, incumplió, según expresó la señora Cacho González.[33]

El 5 de abril de 2024, el señor Vázquez Claudio presentó una *Moción e[n] Oposición a Solicitud de Anotación de Rebeldía y Solicitud de Breve T[é]rmino Adicional para Oponernos a la Solicitud de Fianza*. Mediante esta, expresó, en lo pertinente, que el incumplimiento con el término de veinte (20) días se debió a que, como había informado, se encontraría fuera de la jurisdicción hasta el 1 de abril de 2024, fecha en la cual venció el aludido término.[34]

El 8 de abril de 2024, el TPI emitió una *Orden*, notificada y archivada digitalmente en autos el mismo día, por la que denegó la solicitud de prórroga por incumplir con las disposiciones de la Regla 68.2 de Procedimiento Civil, *supra*, R. 68.2.[35]

El mismo 8 de abril de 2024, el foro primario también emitió una *Orden*, notificada y archivada digitalmente en autos el mismo día, por la que le anotó la rebeldía al señor Vázquez Claudio por incumplir con la *Orden* del 11 de marzo de 2024, aclarada mediante la *Orden* del 27 de marzo de 2024.[36] Por lo que ordenó la

---

[32] *Íd.*, págs. 16-17.
[33] *Íd.*, págs. 18-25.
[34] Entrada Núm. 294 del expediente digital del caso en el SUMAC.
[35] Entrada Núm. 295 del expediente digital del caso en el SUMAC.
[36] Apéndice del recurso de *Certiorari*, págs. 26-27.

continuación de los procedimientos ante la EPA con la celebración de la vista final de alimentos en rebeldía.

El 23 de abril de 2024, el señor Vázquez Claudio presentó una *Moción Solicitando Reconsideración sobre Anotación de Rebeldía.*[37] A través de esta, el peticionario apoyó su petición en que (i) contrató a varios representantes legales para cumplir con lo ordenado; (ii) la representante legal de la señora Cacho González no se encontraba dentro de nuestra jurisdicción, sino cuidando a su nieto; (iii) la recurrida nunca realizó gestión alguna para cumplir con la *Orden* del 11 de marzo de 2024; (iv) y que no le beneficiaba a los menores que a su papá se le anotara la rebeldía, pues ello impediría que se pueda presentar prueba a su favor creando un resultado injusto al momento de computar la pensión, y poniendo en riesgo al peticionario de no poder cumplir con la misma por el encarcelamiento.

Posteriormente, el 20 de mayo de 2024, la señora Cacho González presentó una *Oposición a Solicitud de Reconsideración.*[38] En lo pertinente, solicitó que se mantuviese la anotación de rebeldía del peticionario porque incumplió con múltiples órdenes y términos; se negó a descubrir lo solicitado; agotó el término para descubrir prueba; causó suspensiones; y recurrió a procesos de inhibición e indigencia para retrasar la contratación de representantes legales, entre otras razones.

Ante ello, el 21 de mayo de 2024, el TPI emitió una *Resolución,* notificada y archivada en autos el 24 de mayo de 2024, por la cual denegó la solicitud de reconsideración del peticionario.[39]

---

[37] Apéndice del recurso de *Certiorari,* págs. 28-35.
[38] Entrada Núm. 309 del expediente digital del caso en el SUMAC.
[39] Apéndice del recurso de *Certiorari,* págs. 36-37.

Inconforme con esta determinación, el 24 de junio de 2024, el señor Vázquez Claudio presentó un recurso de *Certiorari* y le imputó al TPI la comisión del siguiente error:

> **ERR[Ó] EL TPI AL EJERCER SU DISCRECIÓN, LAS EXPRESIONES DE LA REPRESENTACI[Ó]N LEGAL DE LA PARTE DEMANDANTE– RECURRIDA PROPICIARON CONFUSI[Ó]N. LO QUE LLEV[Ó] AL PADRE NO PODER CUMPLIR CON LA ORDEN EMITIDA EN EL CASO. LO ANTERIOR DEMUESTRA QUE EL ALIMENTANTE NO ACTU[Ó] CON LA INTENCIÓN DE DILATAR EL PROCESO O CAUSAR UN PERJUICIO INDEBIDO.**

En síntesis, arguyó que, luego de la solicitud de anotación de rebeldía presentada por la recurrida, el foro primario emitió unas órdenes, empero no apercibió al señor Vázquez Claudio sobre las consecuencias ante un posible incumplimiento. Sostuvo además que, la inobservancia con el término prescrito por el foro *a quo* a través de la *Orden* del 11 de marzo de 2024 se debió a la falta de entendimiento y confusión entre los representantes legales de ambas partes, y que surgió una equivocación en la interpretación de un mensaje y una moción informativa presentada por la señora Cacho González. Añadió el señor Vázquez Claudio que levantar la anotación de rebeldía ayudaría a agilizar el proceso en pro del bienestar el menor, y que la prueba que aporte él es pertinente e insustituible para el establecimiento de la pensión alimentaria. Por último, expuso el señor Vázquez Claudio que la recurrida no presentó prueba para demostrar que él actuó con la intención de dilatar el proceso de marras.

El 26 de junio de 2024, emitimos una *Resolución* en la que le concedimos a la señora Cacho González un término de diez (10) días, contados a partir de la notificación de dicha *Resolución*, para exponer su posición sobre los méritos del recurso.

A pesar de brindarle la oportunidad de comparecer, la señora Cacho González no presentó su posición en torno a los méritos del recurso de *Certiorari*.

Consecuentemente, el caso quedó perfeccionado para determinación judicial.

### III.

### A.

El auto de *certiorari* es un remedio procesal discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, *supra,* R. 52.1,[40] establece las instancias en las que el foro revisor posee autoridad para expedir un auto de *certiorari* sobre materia civil. *Scotiabank v. ZAF Corporation, et als.,* 202 DPR 478, 486-487 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorari* que trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. *Mun. de Caguas v. JRO Construction,* 201 DPR 703,

---

[40] Esta Regla dispone en lo pertinente que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

709-710 (2019). Nuestro rol al atender recursos de *certiorari* descansa en la premisa de que es el foro de instancia quien está en mejor posición para resolver controversias interlocutorias, o de manejo del caso, y en la cautela que debemos ejercer para no interrumpir injustificadamente el curso corriente de los pleitos que se ventilan ante ese foro. ***Torres Martínez v. Torres Ghigliotty***, 175 DPR 83, 97 (2008).

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII–B, R. 40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[41]

---

[41] Esta Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

Reiteradamente, el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia la discreción es "[e]l más poderoso instrumento para hacer justicia reservado a los jueces es la discreción". *Rodríguez v. Pérez*, 161 DPR 637, 651 (2004) (*citando a Banco Metropolitano v. Berríos*, 110 DPR 721, 725 (1981)). La discreción se refiere a "la facultad que tiene [el tribunal] para resolver de una forma u otra, o de escoger entre varios cursos de acción". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018); *García López y otro v. E.L.A.*, 185 DPR 371 (2012). En ese sentido, ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Medina Nazario v. McNeil Healthcare LLC*, supra, pág. 729 (*citando a Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001)). Lo anterior "no significa poder actuar en una forma u otra, haciendo abstracción del resto del Derecho". *Hietel v. PRTC*, 182 DPR 451, 459 (2011) (*citando a Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 (1997)); *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *Negrón v. Srio. de Justicia*, supra, pág. 91). Ello, ciertamente, constituiría un abuso de discreción.

En ese sentido, el Tribunal Supremo de Puerto Rico ha establecido que "la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia". *Citibank et al. v. ACBI et al.,* supra, pág. 735. Cónsono con ello, es norma reiterada que este tribunal no intervendrá "con determinaciones emitidas por el foro primario y sustituir el criterio utilizado éste en el ejercicio de su discreción, salvo que se pruebe que actuó con prejuicio o

---

(F)  Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G)  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

parcialidad o incurrió en craso abuso de discreción o en error manifiesto". Íd., pág. 736 (énfasis en el original eliminado). Véase, además, ***Trans-Oceanic Life Ins. v. Oracle Corp.***, 184 DPR 689, 709 (2012); ***Lluch v. España Service Sta.***, 117 DPR 729, 745 (1986).

**B.**

La rebeldía es aquella posición procesal en donde se coloca a la parte que ha dejado de ejercitar su derecho a defenderse o de cumplir con su deber procesal. ***Rivera Figueroa v. Joe's European Shop***, supra, pág. 587 (*citando a* R. Hernández Colón, Derecho Procesal Civil, 5ª ed., San Juan, Ed. LexisNexis, 2010, pág. 287). Es por ello que el propósito del procedimiento de la anotación de rebeldía es desalentar la dilación como estrategia de litigio. ***Rivera Figueroa v. Joe's European Shop***, supra, pág. 587 (*citando a* J.A. Cuevas Segarra, Tratado de derecho procesal civil, 2ª ed., San Juan, Pubs. J.T.S., 2011, T. IV, pág. 1340). Asimismo, es eminente resaltar que "es nota constitutiva de la justicia el tiempo oportuno, por lo que una dilación en la respuesta judicial puede ser una fuente de injusticia". ***Rivera Figueroa v. Joe's European Shop***, supra, pág. 587 (R.L. Vigo, Ética y responsabilidad judicial, Buenos Aires, Rubinzal-Culzoni Editores, pág. 38).

A esos efectos, la Regla 45.1 de Procedimiento Civil, *supra*, R. 45.1, gobierna la anotación de rebeldía disponiendo los fundamentos bajo los cuales una parte puede ser declarada en rebeldía. ***Rivera Figueroa v. Joe's European Shop***, supra, pág. 587; ***Mitsubishi Motor Sales of Caribbean, Inc. v. Lunor, Inc.***, 212 DPR 807, 823 (2023). En lo pertinente, la Regla 45.1 de Procedimiento Civil, *supra*, dispone que, "**[e]l tribunal, a iniciativa propia o a moción de parte, podrá anotar la rebeldía a cualquier parte conforme a la Regla 34.3(b)(3)**". (Énfasis suplido). A tenor

con la Regla 34.3 (b) (3) de Procedimiento Civil, *supra*, R. 34.3 (b) (3):

> (b) *Otras consecuencias.* Si una parte o un funcionario o agente administrador de una parte, o una persona designada para testificar a su nombre según disponen las Reglas 27.6 ó 28, deja de cumplir una orden para llevar a cabo o permitir el descubrimiento de prueba, incluyendo una orden bajo las Reglas 32 y 34.2, el tribunal podrá dictar, con relación a la negativa, todas aquellas órdenes que sean justas; entre ellas las siguientes:
>
> . . . .
>
> (3) Una orden para eliminar alegaciones o parte de ellas, o para suspender todos los procedimientos posteriores hasta que la orden sea acatada, para desestimar el pleito o procedimiento, o cualquier parte de ellos, o para dictar una sentencia en rebeldía contra la parte que incumpla.
>
> . . . .

En otras palabras, bajo la Regla 34.3 (b)(3), *supra*, el TPI está autorizado a anotar la rebeldía como sanción "cuando una parte se niega a descubrir su prueba después de habérsele requerido mediante los métodos de descubrimiento de prueba, **o simplemente cuando una parte ha incumplido con alguna orden del tribunal**". *Rivera Figueroa v. Joe's European Shop*, supra, pág. 588. (Énfasis suplido); *Mitsubishi Motor Sales of Caribbean, Inc. v. Lunor, Inc.*, supra, págs. 823-824.

Finalmente, la anotación de rebeldía "tendrá el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b)". Regla 45.1 de Procedimiento Civil, *supra*; *Mitsubishi Motor Sales of Caribbean, Inc. v. Lunor, Inc.*, supra, pág. 824; *Banco Popular v. Andino Solís*, 192 DPR 172, 179 (2015).

**IV.**

Tras un análisis objetivo, sereno y cuidadoso del recurso de *Certiorari*, en correcta práctica adjudicativa apelativa, y a la luz de los criterios esbozados en la Regla 52.1 de Procedimiento Civil, *supra*, y en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que debemos abstenernos de ejercer nuestra función revisora y rechazar intervenir con la determinación del TPI.

Un examen sosegado del expediente del caso ante nuestra consideración, de la determinación recurrida, así como el trámite procesal ante el TPI, no arroja error alguno que amerite nuestra intervención. Tampoco surge de los autos que el TPI haya incurrido en error, prejuicio, parcialidad o que haya abusado de su discreción. Por el contrario, la determinación del foro primario fue esencialmente correcta en derecho cuando le anotó rebeldía al señor Vázquez Claudio ante sus continuos y repetidos incumplimientos con las órdenes del foro *a quo*. Su proceder denota una total inobservancia de las reiteradas órdenes del foro recurrido. Consecuentemente, no intervendremos con su discreción en esta etapa de los procedimientos.

**V.**

Por las razones anteriormente esbozadas, se *deniega* la expedición del auto de *Certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones