ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| WALDALYS RIVERA ARRUFAT<br><br>APELANTE<br><br><br>v.<br><br>YECKXIEL SECUNDINO RIVERA CINTRÓN<br><br>APELADO | TA2025AP00648 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2024RF02002<br><br><br>Sobre: Alimentos y Hogar Seguro |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de marzo de 2026.

Comparece Waldalys Rivera Arrufat (en adelante, señora Rivera Arrufat o apelante) mediante un recurso de *Apelación* y nos solicita que revisemos la *Sentencia Final* emitida el 12 de septiembre de 2025 y notificada el 15 de septiembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI o foro primario) mediante la cual se declaró No Ha Lugar la solicitud de designación de hogar seguro a favor de la apelante.

Por los fundamentos que exponemos a continuación, se ***confirma*** la *Sentencia Final* apelada.

**I.**

El 12 de noviembre de 2024, la parte apelante presentó una *Demanda*[1] sobre Alimentos y Hogar Seguro en contra de Yeckxiel Secundino Rivera Cintrón (en adelante, señor Rivera Cintrón o apelado), en la que alegó tener la custodia del menor de edad procreado entre ambos y solicitó que el tribunal fijara una pensión alimentaria en beneficio del menor y que se designara como

---

[1] Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI.

hogar seguro del menor un inmueble privativo propiedad del señor Rivera Cintrón, en el que alegadamente el menor había residido desde que nació.

El 9 de diciembre de 2024 el TPI emitió una *Resolución Provisional de Alimentos*[2] mediante la cual se fijó una pensión alimenticia provisional.

Luego de varios trámites procesales, el 29 de enero de 2025, notificada el 31 de enero de 2025, el foro primario dictó una *Sentencia Parcial*[3], mediante la cual le anotó la rebeldía al señor Rivera Cintrón toda vez que este no había presentado su alegación responsiva ni se había expresado en cuanto a la solicitud de la parte apelante. En su dictamen, el TPI otorgó legalmente la custodia del menor a la señora Rivera Arrufat, designó como Hogar Seguro la propiedad privativa del apelado, ubicada en la Carr. 816 km 5.8 INT Barrio Nuevo, Bayamón, Puerto Rico 00956 y mantuvo la determinación sobre lo resuelto en cuanto a los alimentos.

El 5 de febrero de 2025, el apelado presentó una *Moción de Reconsideración*[4], la cual fue declarada No Ha Lugar mediante *Resolución*[5] del 6 de febrero de 2025.

Luego, el 27 de marzo de 2025, con una nueva representación legal, el señor Rivera Cintrón presentó una *Moción Solicitando Relevo de Sentencia*[6], alegando que la *Sentencia Parcial* era nula por haberse dictado en violación de los derechos del apelado al: no haberle dado oportunidad de defenderse; privarlo de su propiedad sin darle el debido proceso de ley; notificarle adecuadamente a la parte del riesgo en que estaba su caso; y no celebrarse una vista para escuchar la necesidad real de vivienda del menor, aun cuando se le anotó la rebeldía, para evaluar si se cumplían con los criterios para establecer un hogar seguro.

---

[2] Entrada Núm. 18 del SUMAC del TPI.
[3] Entrada Núm. 30 del SUMAC del TPI.
[4] Entrada Núm. 31 del SUMAC del TPI.
[5] Entrada Núm. 32 del SUMAC del TPI.
[6] Entrada Núm. 43 del SUMAC del TPI.

Por su parte, el 17 de abril de 2025, la parte apelante radicó una *Réplica a Moción de Relevo de Sentencia[7]* y, el 29 de abril de 2025, el señor Rivera Cintrón presentó una *Moción en Cumplimiento de Orden y Dúplica a Réplica Relevo de Sentencia[8]*.

Evaluados los escritos de las partes, mediante *Resolución y Orden[9]* emitida el 30 de abril de 2025, el TPI dejó en suspenso la determinación original de Hogar Seguro y dejó sin efecto la anotación de rebeldía del apelado. Asimismo, señaló juicio en su fondo para adjudicar la solicitud de hogar seguro.

El 8 de mayo de 2025 el señor Rivera Cintrón presentó su *Contestación a Demanda[10]* en la que alegó que la propiedad privativa sobre la cual se solicitaba el hogar seguro era su única propiedad, que no tenía un lugar donde residir y que la apelante podía buscar un lugar para vivir, ella y sus hijos, incluyendo dos hijos de relaciones previas de la señora Rivera Arrufat.

El 9 de mayo de 2025 el foro primario emitió una *Resolución de Alimentos[11]* en la que se fijó la pensión alimenticia final.

Tras varios trámites procesales, el 1 de julio de 2025 se celebró el juicio en su fondo sobre la solicitud de hogar seguro.[12]

Posteriormente, el 12 de septiembre de 2025, notificada el 15 de septiembre de 2025, el TPI emitió una *Sentencia Final[13]*. En el referido dictamen, el foro primario realizó las siguientes determinaciones de hechos probados y creídos por el tribunal:

1.  Las partes nunca han estado casadas entre sí.

2.  No existe una sociedad legal de bienes gananciales entre la Sra. Rivera Arrufat y el Sr. Rivera Cintrón.

---

[7] Entrada Núm. 49 del SUMAC del TPI.
[8] Entrada Núm. 57 del SUMAC del TPI.
[9] Entrada Núm. 59 del SUMAC del TPI.
[10] Entrada Núm. 66 del SUMAC del TPI.
[11] Entrada Núm. 69 del SUMAC del TPI.
[12] Entrada Núm. 84 del SUMAC del TPI.
[13] Entrada Núm. 85 del SUMAC del TPI.

3. El único bien en comunidad entre las partes es un vehículo Mitsubishi Outlander que se encuentra en posesión de la Sra. Rivera Arrufat.

4. Las partes sostuvieron una relación de convivencia, en la cual procrearon al menor Isaías Yahvet Rivera Rivera, quien hoy cuenta con 3 años de edad.

5. Las partes convivieron primero de forma alquilada en La Loma del Viento en Naranjito y luego en se mudaron a la propiedad privativa Sr. Rivera Cintrón ubicada en la Carr. 816 km 5.8 Int. Barrio Nuevo, Bayamón, Puerto Rico 00956.

6. La mudanza a la propiedad privativa ocurrió cuando el menor tenía entre 2 y 3 meses de edad.

7. La propiedad privativa del Sr. Rivera Cintrón fue construida en el 2021, aproximadamente, tras este adquirir el solar en el 2020.

8. La residencia privativa del Sr. Rivera Cintrón cuenta con 3 cuartos, 2 baños, sala, comedor, cocina, marquesina y patio.

9. La Sra. Rivera Arrufat reside allí actualmente con el menor procreado entre las partes, y otros 2 hijos de la Sra. Rivera Arrufat, que no son hijos del Sr. Rivera Cintrón. Esta ostenta la custodia legal de los 3 menores.

10. El padre de los otros dos menores de la Sra. Rivera Arrufat no aporta económicamente de forma consistente al sustento de sus hijos y tiene atraso de pensión, habiendo acumulado una deuda que no ha sido reclamada por la Sra. Rivera Arrufat ante el Tribunal.

11. La propiedad que se pretende solicitar como hogar seguro no se encuentra hipotecada, pero el Sr. Rivera Cintrón paga un préstamo personal ($90 mensuales) que tomó para terminar el proyecto.

12. La Sra. Rivera Arrufat no paga renta por ocupar la propiedad privativa del Sr. Rivera Cintrón.

13. La Sra. Rivera Arrufat ha realizado algunas pocas gestiones para buscar otras propiedades que pueda ocupar con sus hijos, pero se ha encontrado con lista de espera para los beneficios de Plan 8 o precios elevados de rentas.

14. La Sra. Rivera Arrufat no ha dado más seguimiento a su solicitud plan 8 y la última vez que los contactó fue hace 3 meses (a la fecha del juicio).

15. La Sra. Rivera Arrufat se desempeña *part time* como cuidadora de envejecientes en Santa Juanita Bayamón y

cobra $380 aproximado semanal ya que trabaja solo 3 días (martes, miércoles y jueves). Los restantes 4 días de la semana no trabaja, solo cuida al menor.

16. La Sra. Rivera Arrufat no está impedida de conseguir otro empleo a tiempo parcial los restantes días de la semana en los que actualmente no trabaja.

17. Según la planilla de contribución sobre ingresos de 2024, la Sra. Rivera Arrufat generó un ingreso de $16,777, y se le emitió un reintegro por $7,488.

18. La Sra. Rivera Arrufat recibe $550 de pensión que paga el Sr. Rivera Cintrón por el menor Isaías.

19. La Sra. Rivera Arrufat también recibe beneficios de WIC y cupones.

20. La Sra. Rivera Arrufat ha viajado con los menores a Disney y ella ha realizado viajes a Colombia- aunque alega que fueron regalos parciales de otros familiares y que ella no costeó parte de los viajes.

21. Los hijos mayores de la Sra. Rivera Arrufat- que no son hijos del Sr. Rivera Cintrón- estudian en el Municipio de Naranjito.

22. Al menor Isaías lo cuida una tía de la Sra. Rivera Arrufat que también reside en el Municipio de Naranjito.

23. La Sra. Rivera Arrufat tiene que viajar a Naranjito al menos 5 días a la semana, ya sea para llevar a sus hijos a la escuela o al cuido.

24. El Sr. Rivera Cintrón ofreció la Sra. Rivera Arrufat ayudarle a obtener alguna otra vivienda a bajo costo o que hiciera un préstamo, pero fue rechazado por esta, alegando tener crédito afectado.

   a. No se presentó evidencia del supuesto crédito afectado de la Sra. Rivera Arrufat.

25. Según la Sra. Rivera Arrufat, Naranjito sería el lugar más ideal para vivir poque allí tiene su familia que la ayuda.

26. La Sra. Rivera Arrufat ha rechazado propiedades propuestas por el Sr. Rivera Cintrón, porque una es en "4 calles" en Naranjito y le queda "muy metido" y otra en Bayamón porque el dueño del apartamento sugerido es amigo de este y un supuesto alcohólico; y la Sra. Rivera Arrufat considera que no es un lugar apto para sus hijos.

27. El Sr. Rivera Cintrón tiene 2 hijos 1, de los cuales no ostenta la custodia legal, pero sí la patria potestad y tiene fijada sus relaciones paternofiliales, con las cuales cumple.

28. El Sr. Rivera Cintrón es un padre presente en la vida de sus hijos y tiene el interés y compromiso de continuar participando activamente de la vida de estos.

29. El Sr. Rivera Cintrón se encuentra residiendo temporeramente en casa de su madre (la Sra. Ana Iris Cintrón Cintrón) mientras se resuelve la situación del hogar seguro con su hogar privativo.

30. La madre del Sr. Rivera Cintrón reside bajo contrato de Plan 8 en una propiedad que es 2 habitaciones, 1 de ellas convertida por el arrendador a un laundry, por lo cual solo cuenta con 1 habitación funcional.

31. Según el contrato de Plan 8 de Doña Ana Iris, en dicha residencia solo puede residir ella. Si el arrendador se percata que hay más personas ocupando la propiedad, la Sra. Cintrón Cintrón estaría en riesgo de evicción.

32. El Sr. Rivera Cintrón duerme en el mismo cuarto que su madre.

33. Para el Sr. Rivera Cintrón poder cumplir con las relaciones paternofiliales en los días que le corresponde, Doña Ana Iris tiene que trasladarse a dormir al mueble de la sala y prestarle cuarto al Sr. Rivera Cintrón y sus nietos.

34. El único lugar actualmente disponible en el que el Sr. Rivera Cintrón puede compartir con sus hijos para el disfrute de las relaciones paternofiliales es un área limitada y con 4 personas en él, crea un problema de hacinamiento.

35. El Sr. Rivera Cintrón es técnico de aire acondicionado y trabaja por cuenta propia que opera con un DBA.

36. Los ingresos del demandado fluctúan entre $12,000 y $15,000 anuales. Según la planilla de 2024, este generó ingresos de $12,029 y tuvo un reintegro de $4,577.00. No obstante, tuvo que pagar al IRS $1,700 en la planilla 1040 SS.

37. En las cuentas de banco del Sr. Rivera Cintrón se reflejan ingresos en exceso a lo reportado, sin embargo, dichos pagos corresponden a pagos realizados por clientes que compraron equipos y la ganancia de los equipos no es suya sino del suplidor. Solo los mantenimientos, reparaciones e instalaciones corresponden ingresos propios del Sr. Rivera Cintrón.

38.  Aunque en la cuenta de banco del Sr. Rivera Cintrón se reflejen ingresos de $15,000 en un mes, neto resulta una cantidad ínfima ya que la mayoría de esos pagos se van a los equipos costosos y se paga al suplidor. Además, el Sr. Rivera Cintrón tiene otro(s) empleado(s)/ ayudante(s) a quien(es) se le paga por día y también se incurre en gasto de compra de materiales para poder realizar los trabajos.

39.  La propiedad privativa del Sr. Rivera Cintrón está inscrita en el Registro de la Propiedad como su hogar seguro contra demandas. Dicha escritura incluye exclusivamente al Sr. Rivera Cintrón como el beneficiario de hogar seguro.

40.  El Sr. Rivera Cintrón tiene una responsabilidad de pensión por sus 2 hijos que asciende a $900 mensuales.

41.  El Sr. Rivera Cintrón tiene dificultad para obtener otra vivienda (compra o alquiler) donde pueda compartir con sus hijos ya que sus ingresos son inestables.

42.  El Sr. Rivera Cintrón está dispuesto para aportar a la vivienda de su hijo en otro lugar para él poder retomar su residencia privativa y tener un lugar digno para compartir con sus propios hijos.

43.  El Sr. Rivera Cintrón no tiene ninguna otra propiedad inmueble a su nombre.

Luego de formular las determinaciones de hechos previamente reseñadas, el foro primario concluyó que la solicitud de hogar seguro no procedía. El TPI reconoció que el bienestar del menor es el criterio rector en controversias de esta naturaleza; no obstante, determinó que el derecho a hogar seguro no es automático y que su concesión depende de un análisis de equidad conforme a las circunstancias particulares del caso.

El foro primario resolvió que la señora Rivera Arrufat no demostró una necesidad legítima que justificara la designación del inmueble privativo del señor Rivera Cintrón como hogar seguro del menor ni probó encontrarse en una situación de desventaja económica frente al apelado. Asimismo, determinó que el señor Rivera Cintrón no posee otra propiedad inmueble, que reside temporeramente en el hogar de su madre bajo condiciones limitadas y que la designación solicitada podría ocasionar mayores perjuicios que beneficios.

En consecuencia, declaró No Ha Lugar la solicitud de hogar seguro, mantuvo la pensión alimentaria previamente fijada y concedió a la señora Rivera Arrufat un término de sesenta (60) días para desalojar la propiedad. Dispuso, además, que una vez esta obtuviera otra vivienda, el señor Rivera Cintrón vendría obligado a aportar la cantidad proporcional necesaria para garantizar un techo adecuado para su hijo.

Inconforme, el 30 de septiembre de 2025, la señora Rivera Arrufat presentó una *Solicitud de Reconsideración y para que se hagan determinaciones de derechos adicionales y se eliminen las que no proceden*[14], impugnando múltiples determinaciones de hechos por alegada impertinencia y sosteniendo que el TPI incurrió en error manifiesto y abuso de discreción. El señor Rivera Cintrón presentó su *Moción en Oposición a Solicitud de Reconsideración*[15] el 16 de octubre de 2025.

Mediante *Resolución*[16] del 5 de noviembre de 2025, notificada al día siguiente, el TPI declaró No Ha Lugar la reconsideración y se sostuvo en su *Sentencia Final*, al concluir que las determinaciones impugnadas eran pertinentes para evaluar la capacidad económica de las partes y la equidad del remedio solicitado. Además, incorporó como nueva determinación de hecho la siguiente:

> 44.    La residencia objeto de esta petición de hogar seguro es la única que ha conocido el menor IYRR, donde reside desde los tres (3) meses de nacido, de manera ininterrumpida, estable y segura.

Aún insatisfecha, el 8 de diciembre de 2025 la señora Rivera Arrufat presentó el recurso de epígrafe en el que plantea que el TPI cometió los siguientes errores:

> **PRIMER ERROR: ERRÓ EL TPI AL DESPOJAR AL MENOR IYRR. DE SU HOGAR SEGURO SIN TOMAR EN CONSIDERACIÓN LAS DISPOSICIONES ESTABLECIDAS EN *CANDELARIO VARGAS V. MUÑIZ DÍAZ, SUPRA*.**

---

[14] Entrada Núm. 95 del SUMAC del TPI.
[15] Entrada Núm. 97 del SUMAC del TPI.
[16] Entrada Núm. 103 del SUMAC del TPI.

**SEGUNDO ERROR: ERRÓ EL TPI AL SOBREPONER EL INTERÉS PROPIETARIO DEL APELADO SOBRE EL INTERÉS APREMIANTE DEL ESTADO, MEDIANTE SU PODER DE *PARENS PATRIAE*, EN PROTEGER EL BIENESTAR DEL MENOR, CONSTITUYENDO ELLO UN ERROR MANIFIESTO DEL FORO INFERIOR.**

**TERCER ERROR: ERRÓ EL TPI AL NO ACOGER LAS DETERMINACIONES DE HECHOS PROPUESTAS Y ELIMINAR LAS SOLICITADAS, DADO QUE EN AMBOS CASOS REDUNDAN EN UNA SENTENCIA FAVORABLE PARA EL MENOR IYRR.**

**CUARTO ERROR: ERRÓ EL TPI EN SU APRECIACIÓN DE LA PRUEBA, TODA VEZ QUE DE LA MISMA SURGE QUE SE CUMPLE CON TODOS LOS ELEMENTOS QUE ESTABLECE EL ORDENAMIENTO JURÍDICO PARA CONCEDER EL DERECHO A HOGAR SEGURO SOBRE UNA PROPIEDAD PRIVATIVA DE UNOS DE LOS PROGENITORES, EN ESTE CASO EL PADRE.**

Junto con su escrito de apelación, la parte apelante solicitó un término para presentar la transcripción de la prueba oral[17] y mediante *Resolución*[18] notificada el 11 de diciembre de 2025 le concedimos treinta (30) días para presentar la transcripción de la prueba ante este Tribunal. El 9 de enero de 2026 la apelante cumplió con lo ordenado y el 19 de enero de 2026 la parte apelada señaló algunas modificaciones y estipuló la transcripción presentada.[19] En consecuencia, el 20 de enero de 2026, notificada el 22 de enero de 2026, emitimos una *Resolución*[20] en la que acogimos la transcripción estipulada por las partes y ordenamos a la parte apelada a cumplir con los términos señalados en la *Resolución* notificada el 11 de diciembre de 2025.

Tras varios incidentes, el 23 de febrero de 2026, la señora Rivera Arrufat presentó su *Alegato Suplementario de la Apelante*[21].

Por su parte, el 23 de marzo de 2026, el señor Rivera Cintrón presentó su oposición al recurso.[22]

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

---

[17] Entrada Núm. 2 del SUMAC del TA.
[18] Entrada Núm. 3 del SUMAC del TA.
[19] Entradas Núm. 4, 6 y 10 del SUMAC del TA.
[20] Entrada Núm. 11 del SUMAC del TA.
[21] Entrada Núm. 16 del SUMAC del TA.
[22] Entrada Núm. 19 del SUMAC del TA.

## II.

### A. Estándar de revisión

Es norma conocida que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, "no se favorece la intervención de los tribunales apelativos en la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia." Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2; *Peña Rivera v. Pacheco Caraballo,* 213 DPR 1009, 1024 (2024); *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). Incurre en pasión, prejuicio o parcialidad el juez "que actúe movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que someta prueba alguna". *Ortiz Ortiz v. Medtronic, supra,* pág. 779, citando a *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013). En cuanto al error manifiesto, este ocurre cuando el foro revisor está convencido de que se cometió un error "porque existe un conflicto entre las conclusiones y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Méndez v. Morales*, 142 DPR 26, 36 (1996).

En ese contexto, la llamada deferencia judicial está predicada en que los jueces del TPI "están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo". *Peña Rivera v. Pacheco Caraballo, supra,* pág. 1025, citando a *Ortiz Ortiz v. Medtronic, supra,* pág. 779. No obstante, si la apreciación de la prueba no representa el balance más racional, justiciero y jurídico de la totalidad de la prueba y cuando la evaluación se distancie de la realidad fáctica o esta es inherentemente imposible o increíble, los foros apelativos tenemos la responsabilidad ineludible de intervenir. *Santiago Ortiz v. Real Legacy et al.*,

*supra*; *González Hernández v. González Hernández*, 181 DPR 746, 776–777 (2011); *Pueblo v. Santiago et al.*, 176 DPR 133, 148 (2009).

Por otro lado, cuando las conclusiones de hechos se fundamentan en prueba documental o pericial, es norma establecida que el tribunal revisor se encuentra en igual posición que el tribunal sentenciador para evaluarla. *Santiago Ortiz v. Real Legacy et al., supra.* En consecuencia, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *González Hernández v. González Hernández, supra*, pág. 777.

### B. El derecho a hogar seguro en nuestro ordenamiento

En Puerto Rico existe un marcado interés social en proteger y fomentar que cada familia cuente con una vivienda segura, cómoda y adecuada, interés que se refleja en la amplia legislación adoptada a lo largo de los años. *Cruz Cruz v. Irizarry Tirado*, 107 DPR 655, 660-661 (1978). Por ello, la base fundamental de la figura del hogar seguro es la protección de la familia. *Federal Land Bank v. Corte Municipal*, 47 DPR 942, 945 (1935).

La institución del hogar seguro está recogida tanto en el Código Civil como en legislación especial. En lo que aquí nos concierne, el Artículo 477 del Código Civil de 2020, 31 LPRA sec. 6851, dispone que:

> Cualquiera de los excónyuges o cualquiera de los hijos que quedan bajo su patria potestad, puede solicitar el derecho a permanecer en la vivienda de la Sociedad de Gananciales que constituye el hogar principal del matrimonio y de la familia antes de iniciarse el proceso de divorcio. Este derecho puede reclamarse desde que se necesita, en la petición de disolución del matrimonio, durante el proceso o luego de dictarse la sentencia. En los casos donde la vivienda familiar principal sea privativa de cualquiera de los excónyuges y exista otra vivienda perteneciente a la Sociedad de Gananciales, el Tribunal podrá establecer como vivienda familiar la propiedad perteneciente a la Sociedad de Gananciales. **En los casos en que no exista una vivienda perteneciente a la Sociedad de Gananciales, el tribunal determinará como se cumplirá con el derecho a hogar seguro.** (Énfasis nuestro).

Por su parte, el Artículo 478 del mismo Código, 31 LPRA sec. 6852, establece que, al adjudicar la permanencia en la vivienda familiar, el tribunal deberá considerar los siguientes factores:

(a) los acuerdos de los cónyuges sobre el uso y el destino de la vivienda durante la vigencia del matrimonio y después de su disolución;

(b) si el cónyuge solicitante mantiene la custodia de los hijos menores de edad;

(c) si el cónyuge solicitante retiene la patria potestad prorrogada o la tutela de los hijos mayores incapacitados o con impedimentos físicos que requieren asistencia especial y constante en el entorno familiar;

(d) si los hijos mayores de edad, pero menores de veinticinco (25) años, permanecen en el hogar familiar mientras estudian o se preparan para un oficio;

(e) si la vivienda familiar es el único inmueble que puede cumplir razonablemente ese propósito dentro del patrimonio conyugal, sin que se afecte significativamente el bienestar óptimo de los beneficiados al momento de su concesión con más necesidad de protección;

(f) si el cónyuge solicitante, aunque no tenga hijos o, de tenerlos, no vivan en su compañía, necesita de esa protección especial, por su edad y situación personal; y

(g) cualquier otro factor que sea pertinente para justificar el reclamo.

En armonía con esa política pública, el Tribunal Supremo ha interpretado que el derecho a hogar seguro puede extenderse a la vivienda familiar aun cuando esta no constituya un bien ganancial. Así, en *Candelario Vargas v. Muñiz Díaz*, 171 DPR 530 (2007), el Alto Foro resolvió que el derecho puede recaer sobre un bien común entre excónyuges e, incluso, sobre un inmueble privativo del progenitor no custodio.

Al así resolver, el Tribunal destacó que la concesión del hogar seguro no altera la titularidad del inmueble, sino que responde a la necesidad de proteger a los menores y preservar, en la medida posible, la estabilidad del núcleo familiar. *Id.*, pág. 540. Entre los factores considerados por el Tribunal Supremo en ese caso figuraron que la propiedad había servido como hogar familiar, que era la única residencia reconocida por la menor y que el derecho

de propiedad cede ante el interés social de proteger a los hijos y la familia. *Id.*, págs. 544-545; véase también *Rodríguez v. Pérez*, 161 DPR 637, 660 (2004).

De otra parte, en nuestro ordenamiento jurídico es doctrina reiterada que la obligación de los padres de proveer alimentos a sus hijos menores reviste el más alto interés público, pues busca garantizar su bienestar. *Díaz Rodríguez v. García Neris*, 208 DPR 706, 717 (2022); *Umpierre Matos v. Juelle Arbello*, 203 DPR 254, 265 (2019); *Ríos v. Narváez*, 163 DPR 611, 618 (2004). Esta responsabilidad constituye, además, un componente esencial del derecho a la vida reconocido en la Sección 7 del Artículo II de la Constitución de Puerto Rico. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1; *Rivera v. Villafañe González*, 186 DPR 289, 293 (2012)(SENTENCIA).

El Art. 653 del Código Civil de Puerto Rico, 31 LPRA sec. 7531, define los alimentos como "todo lo que es indispensable para el sustento, **la vivienda**, la vestimenta, la recreación y la asistencia médica de una persona, conforme a la posición social de su familia." (Énfasis nuestro). Es decir, "el deber que tienen los padres de alimentar a sus hijos incluye el deber de proveerles para su habitación, por lo que el hogar seguro se configura precisamente como una forma de contribución a esa carga." *Candelario Vargas v. Muñiz Díaz, supra*, pág. 547.

Por ello, en *Candelario Vargas v. Muñiz Díaz, supra*, nuestro Alto Foro expresó que:

> El interés propietario que puedan tener los padres sobre la vivienda familiar habitual que se reclama como hogar seguro no es un factor *determinante* al momento de decidir si procede o no una petición de hogar seguro. **Como tampoco es relevante el hecho de que haya o no existido un matrimonio entre los padres de la menor para determinar si a la menor le cobija este derecho, pues como ya hemos señalado, la obligación de alimentar a los hijos no está supeditada a la preexistencia de una relación matrimonial.** *Id.,* págs. 547-548. (Énfasis nuestro).

La finalidad de esta figura es procurar, en la medida posible, la continuidad de las condiciones de vida existentes antes de la ruptura y

asegurar el cumplimiento del deber de los progenitores de proveer una vivienda adecuada a sus hijos. *Id.*, pág. 548.

De la misma forma, en su interpretación, el Tribunal Supremo señaló que **la concesión del derecho a hogar seguro no es automática, sino que "se basa en los preceptos de equidad vislumbrados según las circunstancias de cada caso y debe satisfacer una necesidad legítima"**. *Candelario Vargas v. Muñiz Díaz, supra,* pág. 548; *Cruz Cruz v. Irizarry Tirado, supra,* pág. 661. (Énfasis nuestro).

Por otro lado, es preciso reiterar que "el derecho a hogar seguro 'no afecta la titularidad ni es un título adicional de propiedad', ya que lo que cambia es el uso de la propiedad y no su título". *Candelario Vargas v. Muñiz Díaz, supra*; *Rodríguez v. Pérez, supra,* pág. 655. A esos efectos, el Artículo 3 de la Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar, Ley Núm. 195-2011, según enmendada, 31 LPRA sec. 1858, dispone que:

> Todo individuo o jefe de familia, domiciliado en Puerto Rico, tendrá derecho a poseer y disfrutar, en concepto de hogar seguro, una finca consistente en un predio de terreno y la estructura enclavada en el mismo, o una residencia bajo el régimen de la Ley de Condominios, o una residencia edificada bajo el derecho de superficie, que le pertenezca o posea legalmente, y estuviere ocupado por éste o por su familia exclusivamente como residencia principal.

Es decir, la protección que brinda la Ley Núm. 195-2011 no queda interrumpida por el mero hecho de que el propietario del inmueble no esté en posesión de este, siempre que quien lo ocupe sea el propio titular o su familia, como residencia principal.

### III.

La apelante sostiene que el TPI erró al denegar la solicitud de hogar seguro a favor del menor IYRR. En esencia, alega que el foro primario no aplicó correctamente lo resuelto en *Candelario Vargas v. Muñiz Díaz, supra*; al supuestamente supeditar el bienestar del menor al interés propietario del apelado; al rechazar las determinaciones de hechos propuestas; y al incurrir en error manifiesto en la apreciación de la prueba desfilada en el juicio.

Sostiene que, conforme a la prueba presentada, se cumplían los requisitos para conceder el derecho a hogar seguro aun tratándose de un inmueble privativo del progenitor no custodio.

Al examinar el expediente en su totalidad concluimos que no se configuró error manifiesto ni abuso de discreción por parte del foro primario. En su *Sentencia Final*, el TPI consignó cuarenta y cuatro (44)[23] determinaciones de hecho, las cuales surgen respaldadas por la prueba desfilada en el juicio. Entre ellas, determinó que la propiedad es privativa del apelado y constituye el único inmueble a su nombre; que este reside temporeramente en el hogar de su madre bajo condiciones de hacinamiento, con riesgo potencial de afectar el contrato de Plan 8 de esta; que la apelante no paga renta por ocupar la propiedad y que recibe ingresos por concepto de empleo parcial, pensión alimentaria y beneficios públicos. Además, a base de la prueba desfilada, el TPI determinó que la apelante ha realizado pocas gestiones para buscar otras propiedades que pueda ocupar con sus hijos, pero se ha encontrado con lista de espera para los beneficios de Plan 8 o precios elevados de rentas, así como que ha rechazado propiedades propuestas por el apelado. También se estableció que la residencia ha sido el hogar del menor desde los tres (3) meses de edad y que el padre de los otros dos hijos de la apelante no está aportando económicamente al sustento de sus hijos, habiendo acumulado una deuda que no ha sido reclamada por la señora Rivera Arrufat.

A la luz de esa prueba, el foro primario concluyó que la apelante no demostró una necesidad legítima que justificara la designación del inmueble como hogar seguro y que la concesión solicitada podría generar mayores perjuicios que beneficios, particularmente al considerar la situación del apelado y sus obligaciones. En específico, el TPI dispuso que la designación

---

[23] Inicialmente fueron cuarenta y tres (43) determinaciones de hechos y mediante la *Resolución* del 5 de noviembre de 2025 se incorporó la determinación de hecho número cuarenta y cuatro (44). Véase Entrada Núm. 103 del SUMAC del TPI.

de hogar seguro le causaría al menor y al apelado mayores perjuicios que beneficios, por cuanto el señor Rivera Cintrón, entre otras cosas, estaría "desprovisto de un lugar adecuado para pernoctar y compartir con sus hijos los días que le corresponde disfrutar de las relaciones paternofiliales y con las cuales tiene el compromiso de cumplir" y "carec[e] de medios suficientes en estos momentos para adquirir o rentar otra propiedad para su uso y disfrute y el de sus hijos".

Asimismo, contrario a lo que alega la parte apelante, en cuanto a que el foro primario antepuso el interés propietario del apelado ante el mejor bienestar del menor de edad, en su *Sentencia Final* el TPI expresamente reconoció que el bienestar del menor es el criterio rector en controversias de esta naturaleza. No obstante, la mera circunstancia de que el menor haya residido en la propiedad no obliga automáticamente a conceder el remedio. Por el contrario, aplicando la doctrina establecida en *Candelario Vargas*, *supra*, el foro primario correctamente concluyó que la determinación debe responder a un análisis de equidad y a la totalidad de las circunstancias probadas.

En este caso, del récord surge que el menor IYRR tiene apenas tres (3) años. Aunque ha residido en la propiedad desde los tres (3) meses de nacido, no se presentó prueba de que haya desarrollado un nexo particular o un vínculo de amistades o relaciones sociales con la comunidad cerca de la residencia en Bayamón más allá del hecho de vivir allí. Por el contrario, las determinaciones de hecho reflejan que el entorno familiar y de apoyo de la apelante se encuentra en el Municipio de Naranjito. Allí estudian los otros dos menores bajo su custodia, el cuido del menor IYRR, y allí reside la familia de la apelante, quien expresó que ese municipio sería el lugar ideal para vivir por contar con esa ayuda.

También surge de la prueba que la apelante y los tres menores han ocupado la residencia privativa del apelado sin asumir el pago de renta,

mientras que el apelado no cuenta con otra propiedad inmueble y actualmente reside en condiciones limitadas en casa de su madre. Asimismo, consta que el apelado manifestó disposición para colaborar económicamente en la obtención de otra vivienda que sirviera de hogar seguro para su hijo, pero las alternativas propuestas por este a la apelante fueron rechazadas.

A la luz de estas circunstancias, la denegatoria del hogar seguro no supone un cambio radical en el entorno familiar del menor y de la apelante, sino que estaría regresando a las mismas circunstancias en que se encontraba antes de mudarse con el apelado a la propiedad en Bayamón.

Estas consideraciones forman parte del análisis que correspondía realizar al foro primario y sostienen la razonabilidad de su determinación.

No obstante, no es correcta la apreciación del foro primario en cuanto a que el apelado, por no ocupar personalmente la residencia, quedaría expuesto a su ejecución en caso de reclamaciones personales. Como ha resuelto nuestro Tribunal Supremo, la designación de hogar seguro no altera la titularidad del bien, sino que incide únicamente en su uso. *Candelario Vargas v. Muñiz Díaz, supra*; *Rodríguez v. Pérez, supra*, pág. 655. Asimismo, la Ley Núm. 195-2011 no extingue la protección del hogar por el hecho de que el titular no esté en posición física del inmueble, siempre que este constituya su residencia principal o la de su familia.

Ahora bien, la interpretación errónea del foro primario en cuanto a ese asunto en particular no resulta determinante para la controversia ante nos. Aun prescindiendo de ese fundamento, el balance de las circunstancias probadas sostiene que no se demostró una necesidad legítima que justificara la designación solicitada.

Asimismo, no se desprende del récord que el TPI haya actuado con pasión, prejuicio o parcialidad, ni que su apreciación de la prueba se distancie del balance más racional y jurídico de la evidencia presentada. En consecuencia, procede confirmar la *Sentencia Final* apelada.

## IV.

Por los fundamentos que anteceden, se ***confirma*** el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones